# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| GITA F. SANKANO, | : |
| Plaintiff, | : Case No. 8:24-cv-00951-TJS |
| v. | : Hon. Timothy J. Sullivan |
| MAJOR, LINDSEY & AFRICA, LLC, ANDY UFBERG, RANDI LEWIS, and ELIZA STOKER, | : |
| Defendants. | : |

# MEMORANDUM OF LAW IN SUPPORT OF
# DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

FACTUAL BACKGROUND ................................................................................................2

ARGUMENT ..........................................................................................................................5

I.       Legal Standard ............................................................................................................5

II.      The Court Should Dismiss Plaintiff's Section 1981 Claim Because No Contract Exists Between the Parties ..........................................................................................6

III.     The Court Should Dismiss Plaintiff's Section 1981 Claim Because the Complaint Fails to Plausibly Allege that Defendants Possessed a Retaliatory Motive or Intent ..........9

CONCLUSION.....................................................................................................................15

## **TABLE OF AUTHORITIES**

**Cases**                                                              **Page(s)**

*Alexander v. Priv. Protective Servs., Inc.*,
   2022 WL 1567447 (S.D.N.Y. May 18, 2022) .......................................................................8

*Ali v. BC Architects Engineers, PLC*,
   832 F. App'x 167 (4th Cir. 2020) ................................................................................10, 12

*Alston v. Spiegel*,
   988 F.3d 564 (1st Cir. 2021) ................................................................................................7

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..................................................................................................5, 6, 13

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ..................................................................................................5, 6, 13

*Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*,
   869 F.3d 381 (5th Cir. 2017) .............................................................................................13

*Boyer-Liberto v. Fontainebleau Corp.*,
   786 F.3d 264 (4th Cir. 2015) ...............................................................................................9

*Burke v. Talladega City Bd. of Educ.*,
   2024 WL 714290 (N.D. Ala. Feb. 20, 2024) .....................................................................10

*Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*,
   589 U.S. 327 (2020) ....................................................................................................10, 14

*Domino's Pizza, Inc. v. McDonald*,
   546 U.S. 470 (2006) .........................................................................................................6, 7

*Dunn v. Uniroyal Chem. Co., Inc.*,
   192 F. Supp. 2d 557 (M.D. La. 2001) .................................................................................7

*Elyazidi v. SunTrust Bank*,
   780 F.3d 227 (4th Cir. 2015) ...............................................................................................6

*Hayes v. ATL Hawks, LLC*,
   2019 WL 13059765 (N.D. Ga. Dec. 13, 2019) ...................................................................9

*Jimenez v. Wellstar Health Sys.*,
   596 F.3d 1304 (11th Cir. 2010) ...........................................................................................7

*Lawrence v. DAP Prod., Inc.*,
   2023 WL 7300560 (D. Md. Nov. 6, 2023) ........................................................................10

*Moye v. Chrysler Corp.*,
    465 F. Supp. 1189 (E.D. Mo. 1979) .................................................................................... 7

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
    591 F.3d 250 (4th Cir. 2009) ............................................................................................... 6

*Painter's Mill Grille, LLC v. Brown*,
    716 F.3d 342 (4th Cir. 2013) ............................................................................................... 7

*Pearson v. Prince William Cty. Sch. Bd.*,
    2023 WL 2506415 (E.D. Va. Mar. 14, 2023) ........................................................... 10, 11, 15

*Pullins v. Hancock Whitney Bank*,
    512 F. Supp. 3d 647 (M.D. La. 2021) .................................................................................. 7

*Reyes v. Seaton Enterprises, LLC*,
    2008 WL 2066447 (E.D. Tenn. May 13, 2008) .................................................................... 7

*Thompson v. Potomac Elec. Power Co.*,
    312 F.3d 645 (4th Cir. 2002) ............................................................................................. 13

*Williams v. Waste Management, Inc.*,
    2019 WL 1573847 (N.D. Tex. Jan. 30, 2019) .................................................................... 11

*Zastrow v. Houston Auto Imports Greenway Ltd.*,
    789 F.3d 553 (5th Cir. 2105) .............................................................................................. 9

**Statutes**

42 U.S.C. § 1981 ................................................................................................................ *passim*

42 U.S.C. § 1981(a) ..................................................................................................................... 6

42 U.S.C. § 1981(b) ..................................................................................................................... 6

Civil Rights Act of 1866 .............................................................................................................. 6

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) .................................................................................... 5

**INTRODUCTION**

Plaintiff, an attorney, was fired from her last job and hopes to get a new one. Her one-count complaint alleges that she was denied the services of a legal recruiter, Defendant Major Lindsey & Africa, LLC ("MLA"), because MLA and three of its employees "retaliated" against her for filing a race discrimination lawsuit against her old firm. But her lone claim under 42 U.S.C. § 1981 suffers from two fatal pleading defects that cannot be cured and, therefore, require dismissal of her complaint with prejudice.

First, the absence of a contract between Plaintiff and Defendants dooms her claim. Section 1981 protects the rights of U.S. citizens to make and enforce contracts without regard to race. To state a claim under this statute, a plaintiff must identify an existing or prospective contract that the defendant supposedly impaired through discriminatory conduct. The complaint fails to identify such a contract. Indeed, Plaintiff neither alleges that she had a contract with MLA nor that she expected to have a contract with MLA in the future—and for good reason. MLA does not enter into contracts with job seekers like Plaintiff. Rather, MLA enters into contracts with employers, receiving a commission if an employer hires a candidate MLA presents for its consideration. Thus, Defendants' alleged conduct did not impair Plaintiff's contractual rights, and this case should join the growing list of section 1981 cases courts have dismissed because no contract existed between the parties.

Second, Plaintiff failed to allege that Defendants acted with a retaliatory motive or intent. To state a section 1981 claim, a plaintiff must allege facts showing that the adverse action she allegedly experienced was the product of a desire to retaliate against her for engaging in conduct protected by the statute. In other words, Plaintiff must allege that "but for" her filing of race discrimination claims, MLA would have continued working with her. Yet Plaintiff does not allege that MLA refused to work with her because she filed race-based claims against her former firm (as

1

opposed to claims for back pay or to redress some other alleged wrongdoing). Nor could she do so. MLA's decision, along with its advice that Plaintiff should not make her job search significantly more difficult by suing her prior employer, was entirely unrelated to her bringing race-based claims against her old firm. Because Plaintiff failed to allege facts showing that Defendants purposefully retaliated against her for pursuing such claims, she has not plausibly alleged a section 1981 violation.

For the reasons identified above, Plaintiff's section 1981 claim fails as a matter of law. Accordingly, the Court should dismiss her complaint in its entirety, with prejudice, under Federal Rule of Civil Procedure 12(b)(6).

## **FACTUAL BACKGROUND**[1]

Plaintiff Gita Sankano, a young black female attorney, was hired as an entry-level associate at Pepper Hamilton—now Troutman Pepper Hamilton Sanders LLP ("Troutman")—on August 31, 2019. (Compl. ¶¶ 12, 62.) On November 29, 2023, Troutman fired her. (*Id.* ¶ 72.) Plaintiff claims Troutman terminated her employment "because she complained about race discrimination." (*Id.* ¶ 12.) Nonetheless, Plaintiff alleges that she was optimistic about the future because she "was set to work with MLA," a "massive attorney recruiting agency with 25 office locations, 200+ recruiters and 1,500+ annual placements." (*Id.* ¶¶ 1, 13.) Plaintiff supposedly arranged to work with two of MLA's managing directors—defendants Randi Lewis and Andy Ufberg. (*Id.* ¶ 14.) She was particularly happy about the chance to work with Randi Lewis, as Ms. Lewis had a "stellar reputation for placing diverse candidates." (*Id.* ¶ 15.)

---

[1] The content of this Factual Background section is taken exclusively from Plaintiff's complaint because, on a motion to dismiss, all well-pleaded factual allegations must be taken as true. As a factual matter, however, the complaint is riddled with inaccurate allegations, which Defendants vehemently deny. To cite one example among many, Plaintiff's allegation that MLA destroyed evidence of its conversations with Plaintiff after sending a litigation hold to its employees (ECF No. 1 ("Compl.") ¶ 110), is patently false.

2

This is not the first time Plaintiff had reached out to Ms. Lewis for help.  When Plaintiff's judicial clerkship was coming to an end in 2019, Plaintiff contacted Ms. Lewis in the hopes that Ms. Lewis would assist her in finding an associate position at a law firm.  (*Id.* ¶ 60.)  Ms. Lewis explained at the time, however, that MLA does not place entry-level associates.  (*Id.* ¶ 61.)  This makes perfect sense.  Law firms are perfectly capable of interviewing attorneys fresh out of law school and will not pay legal recruiters tens of thousands of dollars for steering entry-level attorneys their way.  Similarly, as Ms. Lewis tried to explain to Plaintiff in late 2023 and early 2024, law firms will not pay MLA a five-figure commission for introducing them to a young associate with no portable business who recently was fired by—and filed a lawsuit against—her former firm.  Apparently failing to grasp this basic concept of law firm recruiting, Plaintiff misleadingly (and in conclusory fashion) characterizes the advice Ms. Lewis gave her not to sue Troutman as instructing her "not to stand up for her civil rights."  (*Id.* ¶ 19.)

Ms. Lewis allegedly gave Plaintiff this advice on two occasions.  First, Ms. Lewis spoke with Plaintiff by phone on November 30, 2023.  (*Id.* ¶ 18.)  During that call, Plaintiff claimed that she had been subjected to race discrimination at Troutman and was fired in retaliation for complaining about it.  (*Id.*)  Ms. Lewis allegedly responded, in part, by advising Plaintiff "not to file a lawsuit" against Troutman.  (*Id.* ¶ 19.)  Nonetheless, Ms. Lewis agreed to help Plaintiff (and did so).  (*Id.* ¶¶ 18-20.)  Second, during a call on January 11, 2024, Ms. Lewis again advised Plaintiff not to sue and told Plaintiff that she "would never find a job if she filed suit."  (*Id.* ¶ 20.)  The quote attributed to Ms. Lewis in the complaint does not suggest that she was opposed to race discrimination lawsuits; it suggests only that Ms. Lewis believed that, if Plaintiff sued her former law firm, Ms. Lewis would be unable to place her at a new firm while commanding MLA's commission.  (*Id.* ¶ 88 ("**If you file this lawsuit, I can't place you again**."))

3

Plaintiff rejected Ms. Lewis' advice. On January 17, 2024, Plaintiff sued Troutman for race discrimination and retaliation. (*Id.* ¶ 21.) The next day, Ms. Lewis allegedly phoned Plaintiff and told her that: (1) Ms. Lewis no longer could work with Plaintiff because she sued Troutman; and (2) an associate position at an unnamed law firm ("Law Firm A") to which Ms. Lewis had submitted Plaintiff's materials no longer was available. (*Id.* ¶¶ 20-21.) Plaintiff claims the associate position *was* available and, in fact, Plaintiff secured a January 19, 2024 interview at Law Firm A by herself. (*Id.* ¶ 21.)

Word of Plaintiff's lawsuit against Troutman was communicated to various associate recruiters at MLA by email on the morning of January 18, 2024. (*Id.* ¶ 22.) Commenting on the aggressive nature of the suit, the email's author observed: "This complaint is not messing around." (*Id.*) Ms. Lewis responded in an email to the group, stating: "I represent her and told her not to sue. Thank you for the heads up." (*Id.*) Defendant Ufberg, who is not alleged to have ever communicated with Plaintiff in any way, responded to the announcement by stating: "That's Randi and my candidate fyi we won't work with her now." (*Id.* ¶ 23.) Responding to this email less than a minute later, Ms. Lewis wrote: "Agreed. I will call her later." (*Id.*)

The third individual defendant, Eliza Stoker, Executive Director of MLA's Associate Practice Group, responded in an email to the group shortly thereafter, stating that "we are not washing our hands of this candidate," but that MLA needed to exit the relationship because of the likelihood that the company would be subpoenaed. (*Id.* ¶ 25.) Plaintiff claims this email effectively "blackballed [her] from MLA." (*Id.* ¶¶ 24, 98, 108.) She supports this contention with allegations that, later that month, when she reached out to another recruiter in MLA's Associate Practice Group, she was told that while the recruiter would have loved to help her, "he can't because [MLA] doesn't want its documents subpoenaed." (*Id.* ¶¶ 102-106.)

The theory behind Plaintiff's section 1981 claim is that Defendants retaliated against her for "engaging in protected activity"—i.e., filing the Troutman lawsuit. (*Id.* ¶ 112.) In a bizarre call to action, Plaintiff claims that she wants "law firms and companies to blackball MLA," just as she claims MLA blackballed her. (*Id.* ¶ 9.) However, Plaintiff does not allege that Defendants harbored any ill will against her or took any adverse action against her because she filed discrimination claims. In fact, a fair reading of the complaint suggests that Ms. Lewis was concerned about the effect that Plaintiff suing her old law firm would have on prospective employers *regardless* of the nature of Plaintiff's claims. In other words, it was the filing of *any* lawsuit against Troutman that concerned Ms. Lewis, not the lawsuit's race-based nature.

In addition, Plaintiff does not allege that she had a contract with MLA or expected to have a contract with MLA in the future. In fact, the words "contract" and "agreement" do not appear in any of the complaint's 115 paragraphs. There is no allegation of: (1) a contract between Plaintiff and any Defendant; (2) the material terms of a contract between Plaintiff and any Defendant; (3) Plaintiff's payment of money or other consideration to any Defendant; or (4) any Defendant accepting an offer by Plaintiff to enter into a contract. The reason Plaintiff failed to allege the existence of a contractual relationship between Plaintiff and Defendants is simple: no such relationship existed.

## **ARGUMENT**

### I.     **Legal Standard**

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This requires the

5

plaintiff to "show more than a sheer possibility that the defendant has acted unlawfully." *Id.* In evaluating motions to dismiss, courts must accept as true a complaint's factual allegations and draw all reasonable inferences in the plaintiff's favor. *Elyazidi v. SunTrust Bank*, 780 F.3d 227, 233 (4th Cir. 2015). However, courts need not accept "legal conclusions, … bare assertions devoid of further factual enhancement[,] … unwarranted inferences, unreasonable conclusions, or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).

In this case, Plaintiff's complaint contains a single cause of action for retaliation under 42 U.S.C. § 1981. As explained below, under the federal pleading standards articulated in *Twombly* and *Iqbal*, she has failed to state a claim upon which relief can be granted.

## II. The Court Should Dismiss Plaintiff's Section 1981 Claim Because No Contract Exists Between the Parties

Congress passed the Civil Rights Act of 1866 in the aftermath of the Civil War to vindicate the rights of former slaves. The Act contained language codified today in section 1981, which guarantees black citizens "the same right in every State and Territory to make and enforce contracts … as is enjoyed by white citizens." 42 U.S.C. § 1981(a). By its plain terms, section 1981 prevents persons from impeding the "contractual relationships" of protected minorities through discriminatory conduct. 42 U.S.C. § 1981(b). In keeping with the focus of the statute, the Supreme Court has held that claims brought under section 1981 must "identify an impaired 'contractual relationship,' … under which the plaintiff has rights." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006).

As the Court explained, section 1981 is not a "cure-all" that was "meant to provide an omnibus remedy for *all* racial injustice." *Id.* at 479. Rather, it is squarely grounded in the right to enjoy the benefits of *contracts*. Quoting the Supreme Court, the First Circuit has stated that

6

"Section 1981 is not a full suit of armor—a 'strange remedial provision designed to fight racial animus in all its noxious forms.'" *Alston v. Spiegel*, 988 F.3d 564, 574 (1st Cir. 2021) (quoting *Domino's Pizza*, 546 U.S. at 476). Rather, "it is a bullet proof vest, designed specifically to safeguard contractual relationships." *Id.* Accordingly, "a plaintiff cannot state a claim under § 1981 unless he has (or would have) rights under [an] existing (or proposed) contract that he wishes to 'make and enforce.'" *Domino's Pizza*, 546 U.S. at 479-80.

Because section 1981 prohibits race discrimination only in the making and enforcement of contracts, courts in the Fourth Circuit and elsewhere routinely dismiss section 1981 claims when there is no contract between the plaintiff and the defendant. *See, e.g., Domino's Pizza*, 546 U.S. at 479-80 (reversing Ninth Circuit and agreeing with district court that section 1981 claim should have been dismissed because plaintiff had no contract with defendant); *Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 348 (4th Cir. 2013) (affirming dismissal of section 1981 claims where plaintiffs had no contract with defendants); *Jimenez v. Wellstar Health Sys.*, 596 F.3d 1304, 1308-11 (11th Cir. 2010) (affirming dismissal of section 1981 retaliation claim because doctor who was denied medical staff privileges at defendant healthcare system had no contractual right to such privileges); *Pullins v. Hancock Whitney Bank*, 512 F. Supp. 3d 647, 664 (M.D. La. 2021) (dismissing section 1981 claim and stating that plaintiff's "fail[ure] to identify the contract at issue … is fatal"); *Reyes v. Seaton Enterprises, LLC*, 2008 WL 2066447, at *7 (E.D. Tenn. May 13, 2008) ("There is neither a contractual relationship alleged in the complaint, nor any indication plaintiff Sandra Reyes intended to form a contractual relationship with any of the Defendants. So the complaint fails to state a claim for which relief may be granted…"); *Dunn v. Uniroyal Chem. Co., Inc.*, 192 F. Supp. 2d 557, 561 (M.D. La. 2001) (dismissing section 1981 claim because plaintiff had no contract with defendant); *Moye v. Chrysler Corp.*, 465 F. Supp. 1189, 1190 (E.D. Mo. 1979) (dismissing section 1981 claim where plaintiff failed to allege a "contract or deprivation

of rights to contract"); *cf. Alexander v. Priv. Protective Servs., Inc.*, 2022 WL 1567447, at *3 (S.D.N.Y. May 18, 2022) (denying motion for leave to add section 1981 claim on futility grounds where plaintiff had no contract with defendant).

Here, as noted above, Plaintiff fails to allege that she entered into a contract with one or more of the Defendants. To be sure, Plaintiff contacted Ms. Lewis for free advice, called her on numerous occasions, submitted her resume to Ms. Lewis for feedback, asked Ms. Lewis about job openings, and asked Ms. Lewis to present her to at least one law firm for the firm's consideration. (Compl. ¶¶ 18-20, 60-61, 81-89.) Indeed, hoping to capitalize on Ms. Lewis' "stellar reputation for placing diverse candidates," even after Ms. Lewis allegedly reacted negatively to the news that Plaintiff might sue her former law firm, Plaintiff continued to request favors from Ms. Lewis in an attempt to "get her career back on track." (*Id.* ¶¶ 15, 75-80, 89-90.) But Plaintiff's relationship with Ms. Lewis was not a *contractual* relationship that could give rise to a section 1981 claim. And Plaintiff does not allege otherwise.

Recruiting firms like MLA do not enter into contracts with job seekers who request their services. Instead, MLA contracts with law firms and other employers that pay MLA to steer desirable candidates their way. Accordingly, the complaint does not allege that any money changed hands between Plaintiff and Defendants. None of the hallmarks of a contractual relationship (e.g., offer, acceptance, or consideration) are pled here. The parties were not beholden to each other in any way. Plaintiff was free to use another recruiter to facilitate her job search, and she also was free to schedule interviews on her own, which she did with "Law Firm A" after speaking with Ms. Lewis in January 2024. (*Id.* ¶¶ 87-92.) Plaintiff simply does not allege that a contract or potential contract existed between the parties that could have been impacted by Defendants' decision to stop working with her after January 17, 2024. This pleading deficiency defeats her section 1981 claim.

As one federal court explained, section 1981 "protects someone in his or her right to negotiate, execute, perform, modify, or terminate a contract as well as the right to enjoy all the privileges of the contractual relationship. Nothing suggests it goes further to protect someone in the provision of non-contractual related rights." *Hayes v. ATL Hawks, LLC*, 2019 WL 13059765, at *12 (N.D. Ga. Dec. 13, 2019) (dismissing section 1981 retaliation claim), *aff'd* 844 F. App'x 117 (11th Cir. 2021). Here, because Plaintiff failed to allege that she had a contract with the Defendants and that the Defendants did something to impair her rights under that contract, her section 1981 claim must be dismissed, just like the claims in all the cases cited above. And because Plaintiff cannot cure this pleading defect in an amended complaint, the Court should dismiss her complaint with prejudice.

**III.   The Court Should Dismiss Plaintiff's Section 1981 Claim Because the Complaint Fails to Plausibly Allege that Defendants Possessed a Retaliatory Motive or Intent**

"[N]on-employment retaliation claims under § 1981 are exceedingly rare." *Zastrow v. Houston Auto Imports Greenway Ltd.*, 789 F.3d 553, 564 (5th Cir. 2105). As the Fourth Circuit has explained, the elements of a *prima facie* claim for retaliation under section 1981 are identical to the elements of a retaliation claim under Title VII—namely, that: (1) the plaintiff engaged in a "protected activity"; (2) the plaintiff's "employer took an adverse employment action against her"; and (3) there was a "causal link between the two events." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015). Although Plaintiff never was employed by MLA, she nonetheless contends that her race discrimination suit against Troutman is a "protected activity" that can support a section 1981 claim against Defendants. (Compl. ¶ 112.)

As explained above, Plaintiff's claim is defective because she is not seeking to vindicate the impairment of a contractual right. But in addition, Plaintiff's claim fails as a matter of law because she failed to plausibly allege that Defendants intended to retaliate against her for engaging

9

in a protected activity. At its core, section 1981 is designed to protect persons from racially motivated acts of discrimination. Not surprisingly, then, when bringing a race discrimination claim under the statute, a plaintiff must allege that she was the victim of purposeful discrimination in which "race was the but-for cause of [her] injury." *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 589 U.S. 327, 341 (2020). In other words, to allege discrimination, a plaintiff must plead facts from which it may be inferred that "but for race, [she] would not have suffered the loss of a legally protected right" (i.e., the right to make and enforce contracts). *Id.*

The Fourth Circuit has held that the *Comcast* "but for" standard also applies to section 1981 retaliation claims. *See Ali v. BC Architects Engineers, PLC*, 832 F. App'x 167, 172-73 (4th Cir. 2020); *see also Pearson v. Prince William Cty. Sch. Bd.*, 2023 WL 2506415, at *7-8 (E.D. Va. Mar. 14, 2023) (dismissing section 1981 retaliation claim due to failure to plead "but for" causation and noting that the *Comcast* standard applies to "§ 1981 retaliation plaintiffs"). When analyzing a retaliation claim, however, the question is not whether the defendant's actions were motivated by the plaintiff's *race* but, rather, whether the defendant's actions were motived by a desire to retaliate against the plaintiff for *complaining about race*. *See, e.g., Burke v. Talladega City Bd. of Educ.*, 2024 WL 714290, at *5 (N.D. Ala. Feb. 20, 2024) (dismissing section 1981 retaliation claim because plaintiff failed to allege facts "that would prove *[defendant's] retaliatory motive* was a but-for cause" of the adverse action); *Lawrence v. DAP Prod., Inc.*, 2023 WL 7300560, at *7 (D. Md. Nov. 6, 2023) (ruling that section 1981 retaliation claim failed because defendant's statements "lack[ed] any discriminatory animus").

Plaintiff undoubtedly will argue that she engaged in a "protected activity" by filing a race discrimination suit against Troutman and that there is a causal link between this protected activity and Defendants' "adverse action"—i.e., their decision to stop working with her. But an adverse reaction to the mere filing of the Troutman lawsuit is not enough. To state a *prima facie* case for

10

retaliation under section 1981, Plaintiff must allege facts from which it can be inferred that Defendants wanted to punish her for filing *race-based claims*. *See, e.g., Williams v. Waste Management, Inc.*, 2019 WL 1573847, at *10 (N.D. Tex. Jan. 30, 2019) (holding that retaliation claim failed because plaintiff's complaints of OSHA violations did not implicate activity protected by section 1981). And her complaint does nothing of the sort.

Indeed, one cannot glean from any of Plaintiff's allegations that Defendants' decision to discontinue their relationship with her was motivated by a desire to retaliate against her at all. To the contrary, the complaint suggests only that Defendants believed they would be unable to help Plaintiff find new employment if she sued her old law firm, and they saw no point in continuing to work with her after she did. There are no allegations suggesting that Plaintiff's pursuit of race-based claims against her former firm (as opposed to any other type of claims) factored into Defendants' decision-making. And why would it? MLA is a for-profit business. If Defendants believed they could convince a law firm to hire Plaintiff and send MLA a five-figure commission for presenting her to the firm, logic suggests that Defendants would have continued to work with her.

Plaintiff's theory, however, throws logic out the window. The entire concept of retaliation is that a person does something that harms or offends a second person, and the second person punishes the first person in response. This explains why the vast majority of section 1981 retaliation cases are grounded in employment relationships. Under the typical fact pattern, an employee publicly accuses her employer of engaging in discriminatory practices—by telling co-workers, complaining to management, or filing a lawsuit or an EEOC claim—and the employer responds by firing, demoting, or not promoting the employee. A retaliatory motive is easy to discern in such cases. *See, e.g.*, *Pearson*, 2023 WL 2506415, at *8 (discussing the methods to prove a causal link and dismissing section 1981 employment retaliation claim).

11

Here, in contrast, Plaintiff did nothing to harm or offend Defendants. She simply picked a fight with her former employer. Plaintiff has not alleged, and cannot allege, any facts creating an inference that Defendants wanted to punish her for filing race-based claims against her old firm. Stated differently, Plaintiff has not alleged that, "but for" her filing of claims implicating the concerns behind section 1981, MLA would have continued working with her. Rather, the fair inference to be drawn from Plaintiff's allegations is that MLA would have discontinued the relationship if she had filed *any* claims against Troutman because of the perceived impact such a lawsuit would have on MLA's ability to help Plaintiff gain future employment. *See, e.g.*, *Ali*, 832 F. App'x at 173 (noting, in the context of a section 1981 retaliation claim, that any inference of "but for" retaliation was "further weakened" by the fact that the complaint provided an alternative reason for the adverse action).

In fact, instead of supporting her theory, many of Plaintiff's allegations *refute* the notion that Defendants harbored a discriminatory animus or retaliatory motive against her. Plaintiff concedes that Ms. Lewis has a "stellar reputation for placing diverse candidates" and that she once served as the Diversity, Equity, and Inclusion recruiter at a prominent Maryland law firm. (Compl. ¶ 15.) When Plaintiff was in law school, her classmates told her that if she ever needed a job, she should contact Ms. Lewis because "Ms. Lewis was well known as the best recruiter to place diverse candidates." (*Id.* ¶¶ 58-59.) Consistent with this reputation, Ms. Lewis gave Plaintiff free advice in 2019 and again in 2023 and 2024, reviewing Plaintiff's resume and agreeing to provide her materials to a prospective employer. (*Id.* ¶¶ 58-61, 81-89.) There is no suggestion anywhere in the complaint that Ms. Lewis or any other Defendant was biased against or had an animus toward minorities pursuing race-based claims.

The fact that Ms. Lewis continued working with Plaintiff after Plaintiff first engaged in protected activity further refutes the notion that Defendants possessed a retaliatory motive. On

12

November 30, 2023, Plaintiff informed Ms. Lewis that she "complain[ed] about discrimination" at Troutman—a type of protected activity because it involves the exercise of protected rights—yet Ms. Lewis agreed to work with Plaintiff, submitting her materials to Law Firm A.  (Compl. ¶¶ 18-20.); *see also Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 390 (5th Cir. 2017) (affirming dismissal of section 1981 retaliation claim where adverse action was taken both before and after the protected activity); *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 651 (4th Cir. 2002) (affirming summary judgment for the same reason).  If Plaintiff's theory were correct, Ms. Lewis would have refused to work with Plaintiff the moment she learned Plaintiff had complained about race discrimination.  But she did not, showing that what Ms. Lewis cared about was the filing of a *lawsuit* against Troutman, *not* Plaintiff's attempt to vindicate her rights.

Plaintiff alleges no concrete facts to the contrary.  She posits that Defendants "retaliated" against her "because she filed suit to protest the violation of a federal civil right."  (*Id.* ¶ 100).  But this is precisely the type of conclusory allegation, devoid of factual content, that *Twombly* and *Iqbal* instruct district courts to ignore.  When one sets aside Plaintiff's "spin," her allegations of alleged misconduct are entirely consistent with a race-neutral desire to explain what any experienced legal recruiter knows: suing your old law firm for any reason is a red flag that will make it much more difficult for you to find new employment, particularly through a legal recruiter where the cost of a new firm hiring you will be increased by recruitment fees.

Rather than crediting Plaintiff's self-serving spin, the Court should examine what Ms. Lewis actually *said*, as alleged in bold font in the complaint.  According to Plaintiff, Ms. Lewis told her:

- on November 30, 2023, "**Whatever you do, do not file [a lawsuit].**"; and

- on January 11, 2024, **"If you file this lawsuit, I can't place you again.  [I] will never find you a job."**

13

(*Id.* ¶¶ 74-77, 85-88). These statements do not suggest that Ms. Lewis cared whether Plaintiff filed race-based claims against Troutman. Indeed, one could reach this conclusion only through rank speculation that ignores Ms. Lewis' well-known reputation for working with diverse attorneys. The logical inference from Ms. Lewis' statements is that Ms. Lewis was concerned about the impact of Plaintiff filing a lawsuit on firms that might consider hiring her. By saying "I can't place you," and "[I] will never find you a job," Ms. Lewis is not saying that filing a lawsuit would offend her; rather, she is saying in a race-neutral way that she no longer will be able to *help* Plaintiff because (on top of Plaintiff being recently fired and relatively inexperienced in the narrow legal field of affordable housing) the lawsuit will deter MLA's law firm clients from hiring Plaintiff for an associate position and agreeing to pay MLA a sizeable commission.

The same is true of the internal MLA emails that appear in the complaint, and the notes in MLA's internal "Bullhorn" tracking system. Although these writings reference the fact that Plaintiff filed a discrimination lawsuit (*id.* ¶¶ 109-110), they do not in any way suggest that MLA discontinued its relationship with Plaintiff *because* she included race-based claims in the Troutman complaint. As such, they do not plausibly allege "but for" causation, as *Comcast* and its progeny require. Similarly, Plaintiff alleges that during the November 30, 2023 call, Ms. Lewis tried to dissuade Plaintiff from suing by stating: "I have a lot of white clients who have been let go." (*Id.* ¶ 18.) Like the rest of Plaintiff's allegations, this allegation does not support an inference that, when Ms. Lewis told Plaintiff a month-and-a-half later that it no longer made sense for them to work together, Ms. Lewis possessed a retaliatory motive or intent.

In the end, Plaintiff rests her entire claim on two facts: (1) Defendants learning on January 18, 2024 that she had filed a discrimination lawsuit against Troutman; and (2) Defendants ending their relationship with her immediately thereafter. For the reasons explained above, this is not enough to state a claim for relief because one cannot plausibly infer from these facts that

14

Defendants' conduct was motivated by discriminatory animus or a retaliatory intent. *See Pearson*, 2023 WL 2506415, at *8 (dismissing section 1981 retaliation claim because there was "plenty of *speculation*" as to why defendant did not give plaintiff a job reference but "no factual allegations connecting his protected activity to the adverse action, let alone 'regular acts showing animus or antagonism.'") (citation omitted).

There are perfectly good, non-discriminatory reasons—based on decades of recruiting experience—why Defendants reacted the way they did to learning about the Troutman lawsuit. Plaintiff may disagree with Ms. Lewis' assessment that she "will never find [Plaintiff] a job," but one cannot infer from the complaint's allegations that Plaintiff was the target of purposeful discrimination, or that Defendants would have continued their relationship with her "but for" her including race-based claims in the Troutman complaint. Because Plaintiff failed to plausibly allege that Defendants had a retaliatory motive, and because she cannot cure this fatal pleading defect, the Court should dismiss her complaint with prejudice.

## CONCLUSION

For the foregoing reasons, Defendants Major, Lindsey & Africa, LLC, Randi Lewis, Andy Ufberg, and Eliza Stoker respectfully request that the Court dismiss Plaintiff's complaint in its entirety, with prejudice, under Rule 12(b)(6) and grant Defendant any other relief the Court deems just and proper.

June 4, 2024                              Respectfully submitted,


                                          /s/ *Kraig B. Long*
                                          Kraig B. Long (Fed. Bar No. 25747)
                                          Jeffrey T. Johnson (Fed Bar No. 1724768)
                                          Maya R. Foster (Fed. Bar No. 30733)
                                          Nelson Mullins Riley & Scarborough, LLP
                                          100 South Charles Street, Suite 1600
                                          Baltimore, Maryland 21201
                                          Phone: (443) 392-9400
                                          Facsimile: (443) 392-9499
                                          kraig.long@nelsonmullins.com
                                          jeffrey.johnsono@nelsonmullins.com
                                          maya.foster@nelsonmullins.com


                                          NELSON MULLINS RILEY & SCARBOROUGH, LLP
                                          100 S. Charles Street, Suite 1600
                                          Baltimore, MD 21201
                                          Tel: 443.392.9453
                                          Fax: 443.392.9499
                                          kraig.long@nelsonmullins.com

                                          David J. Doyle (*pro hac vice motion pending*)
                                          Erin M. Franzblau (*pro hac vice motion pending*)
                                          Alexander A. Pabon (*pro hac vice motion pending*)
                                          SMITH, GAMBRELL & RUSSELL LLP
                                          311 S. Wacker Drive, Suite 3000
                                          Chicago, IL 60606
                                          Tel: 312.360.6000
                                          Fax: 312.360.6520
                                          ddoyle@sgrlaw.com
                                          efranzblau@sgrlaw.com
                                          apabon@sgrlaw.com

                                          ***Counsel for Defendants,***
                                          ***Major, Lindsey & Africa, LLC, Andy Ufberg,***
                                          ***Randi Lewis, and Eliza Stoker***