**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
--------------------------------------------------------- X
GITA F. SANKANO,                                            :
                                                           :    Civil Action No.: 8:24-cv-00951-TJS
                          Plaintiffs,                      :
                                                           :
              v.                                           :    **AMENDED COMPLAINT**
                                                           :
MAJOR, LINDSEY & AFRICA; ANDY                              :
UFBERG, in his individual and professional                :
capacity, RANDI LEWIS, in her individual and              :    **Jury Trial Demanded**
professional capacity, and ELIZA STOKER, in               :
her individual and professional capacity                  :
                                                           :
                          Defendants.                      :
--------------------------------------------------------- X

Plaintiff Gita Sankano ("Plaintiff") hereby alleges as follows:

**PRELIMINARY STATEMENT**

1.      Major, Lindsey & Africa ("MLA" or the "Firm") is a massive attorney recruiting agency with 25 office locations, 200+ recruiters and 1,500+ annual placements.  As such, MLA touts itself as the preeminent attorney recruiting firm for AmLaw 100 and Magic Circle Law firms, as well as Fortune 1000 and FTSE 250 companies.

2.      MLA also claims to champion diversity.  Unfortunately, these claims are false.

3.      Indeed, though MLA's clients undoubtedly expect that the Firm is presenting the best possible candidates for any given position, the reality is that MLA openly blackballs and unlawfully eliminates from consideration victims of race discrimination who have the courage to speak out against it.

4.      In other words, rather than let its clients choose from amongst the most qualified candidates, MLA makes the unlawful decision for them that minorities who speak out against discrimination are undeserving of employment.  That is exactly what happened in this case.

5.      Specifically, after Ms. Sankano, a Black female victim of race discrimination, challenged her former employer in an effort to vindicate her federally protected civil rights, MLA immediately blackballed her, lied to her about potential employment opportunities and refused to work with her.

6.      To make matters worse, these actions were not taken by rogue lower-level employees.  Rather they were taken by the individual Defendants, two of whom are Managing Directors (Randi Lewis and Andy Ufberg) and one of whom is MLA's Head of the Associate Practice Group (Eliza Stoker).  In fact, every single recruiter in the Associate Practice Group was told not to work with Ms. Sankano – an Associate – because she had the courage to speak out against race discrimination.

7.      MLA's despicable conduct is a perfect example of why people of color continue to face abhorrent discrimination in the workplace and in society at large.  Indeed, one of the most significant reasons that systemic race discrimination persists is because people who observe and experience it stay silent because they are afraid that they are going to suffer retaliation if they say anything.

8.      As the premier recruiting firm for big law and large corporations, MLA should stand with victims of race discrimination and be a leader in the fight against discrimination in all forms.  Instead, as described herein, it has proven to be an accomplice to it.

9.      As such, Ms. Sankano is filing this action to: (i) warn law firms and companies about MLA's unlawful conduct; and (ii) call upon law firms and companies to blackball MLA.

10.      If MLA will not work with minorities who have the courage to speak out against discrimination, law firms and corporations should not work with MLA.

*          *          *          *          *

11.     This case is very simple.

12.     In November 2023, Ms. Sankano, a young Black female attorney, was summarily terminated by Troutman Pepper Hamilton Sanders LLP ("Troutman") because she complained about race discrimination.[1]

13.     However, despite being subjected to racism and retaliation at Troutman, Ms. Sankano was optimistic that she would land on her feet because she was set to work with MLA. In addition to the Firm's stellar reputation for placing legal talent, Ms. Sankano admired its purported commitment to diversity, contained directly on the landing page of the Firm's website: "Diversity is a core value of our firm and has been since our founding. We are deeply committed to diversity for our clients and for ourselves, embracing, encouraging and supporting diversity wherever—and whenever—we can."

14.     Moreover, Ms. Sankano was happy to be working with Ms. Lewis, Managing Director, Baltimore, Washington, D.C. & Philadelphia, as well as Mr. Ufberg, Managing Director, Philadelphia & Washinton D.C.

15.     Ms. Lewis in particular has a stellar reputation for placing diverse candidates. On her MLA biography page, Ms. Lewis touts herself as a "a champion of diversity and inclusion [and] a member of the company's 2019 global Diversity Council." She also formerly served as the Diversity, Equity and Inclusion recruiter at Miles and Stockbridge P.C., a prominent firm in Maryland.

---

[1]     See https://news.bloomberglaw.com/litigation/troutman-pepper-sued-by-black-associate-alleging-bias-reprisal; https://abovethelaw.com/2024/01/former-associate-hits-biglaw-firm-with-racial-discrimination-case-after-dehumanizing-email/; https://www.reuters.com/legal/government/us-law-firm-troutman-sued-discrimination-by-fired-black-lawyer-2024-01-17/

16.     Unfortunately, Ms. Sankano would quickly learn that Ms. Lewis and MLA are frauds when it comes to their purported commitment to diversity and inclusion.  They do not "embrace, encourage[,] support" or "champion" diversity and inclusion.  Rather, without any basis whatsoever, Ms. Lewis tried to convince Ms. Sankano that her claims against Troutman were without merit and that she should not file them.  When Ms. Sankano did file them, Ms. Lewis and Andy Ufberg, Managing Director, Philadelphia & Washington D.C., immediately retaliated against Ms. Sankano by refusing to work with her.

17.     Ms. Sankano's claims herein do not rely on conjecture or supposition.  Rather, they rely on Defendants' own words and documented email correspondence.

18.     First, Ms. Sankano spoke with Ms. Lewis on November 30, 2023.  During their call, Ms. Sankano explained to Ms. Lewis that she had been subjected to race discrimination at Troutman and terminated in retaliation for complaining about discrimination.  Without any basis whatsoever, and without knowing any of the relevant facts, Ms. Lewis incredulously responded, "I have a lot of white clients who have been let go."  Apparently, Ms. Lewis – who is a lawyer and recruiter – is of the belief that there is no such thing as discrimination because sometimes white people lose their jobs.

19.     Second, during the same call, again, not knowing anything about the potential merits or value of Ms. Sankano's claims, Ms. Lewis told Ms. Sankano in no uncertain terms not to file a lawsuit.  This was a completely egregious directive, particularly coming from an attorney.  It is also disgusting that Ms. Lewis, a purported "champion" of diversity, would instruct a young Black woman not to stand up for her civil rights.

20.     Third, on January 11, 2024, when discussing a possible position at Law Firm A, Ms. Lewis again directed Ms. Sankano not to file suit and threatened that Ms. Sankano would

never find a job if she filed suit.  She did, however, agree to submit Ms. Sankano's materials to Law Firm A.

21.     Fourth, on January 17, 2024, Ms. Sankano filed a race discrimination and retaliation lawsuit against Troutman.  On January 18, 2024, Ms. Sankano received a call from Ms. Lewis informing her that the position at Law Firm A was no longer available.  Ms. Sankano knew that this statement was a lie because she had independently secured an interview for the position (scheduled for January 19, 2024).  Ms. Lewis also told Ms. Sankano that she could no longer work with her because she filed a race discrimination and retaliation suit against Troutman.

22.     Fifth, as stated above, one need not take Ms. Sankano's word on these matters. Below is Ms. Lewis' response to an email sent to an MLA listserv after Ms. Sankano filed suit:

**Subject:**  Re: Troutman Pepper Discrimination Lawsuit
**Date:**  Thursday, January 18, 2024 at 7:54:38 AM Pacific Standard Time
**From:**  Lewis, Randi
**To:**  Patel, Krishna, DLIST-MLA_APG_Intel
**Attachments:** Image001.jpg

I represent her and told her not to sue. Thank you for the heads up.

Warm Regards,

Randi

Randi S. Lewis
Managing Director
Major, Lindsey & Africa
rlewis@mlaglobal.com
Office 410.540.7087
Mobile 410.340.3511

---

**From:** Patel, Krishna <kpatel@mlaglobal.com>
**Sent:** Thursday, January 18, 2024 10:53:27 AM
**To:** DLIST-MLA_APG_Intel <APG_Intel@MLAGlobal.com>
**Subject:** Troutman Pepper Discrimination Lawsuit

A Black former associate at Troutman Pepper sued the law firm in D.C. federal court, claiming she was discriminated against and then fired for complaining about her treatment. Plaintiff  Gita Sankano said she was fired in retaliation for filing an internal discrimination complaint against a partner who demeaned and demoralized her. A firm spokesperson said it will fight the lawsuit.

This complaint is not messing around:
https://finefx.thomsonreuters.com/gfx/legaldocs/dwvkedjimvm/Sankano%20Federal%20Complaint.pdf?
utm_source=Sailthru&utm_medium=Newsletter&utm_campaign=Daily-
Docket&utm_term=011824&user_email=31c5543c1734d25c7206f5fd591525d0295bec6fe84ff82f946a34fe970a1e6
6

## Krishna D. Patel
(Pronouns: She/Her)
DIRECTOR
ASSOCIATE PRACTICE GROUP
521 Fifth Ave
New York, NY 10175
O +1.212.421.5863    M +1.240.988.8976

## MAJOR, LINDSEY & AFRICA
Associate, In-House Counsel Recruiting, Interim Counsel,
Law Firm Management, Partner Recruiting, & Transform Advisory Services
My LinkedIn Profile    BIO

23.    Sixth, at approximately the same time, Ms. Lewis sent another response, as did

Mr. Ufberg, memorializing their unlawful decision:

---

**From:** Lewis, Randi <rlewis@mlaglobal.com>
**Sent:** Thursday, January 18, 2024 10:55 AM
**To:** Ufberg, Andrew <aufberg@MLAGlobal.com>; Patel, Krishna <kpatel@mlaglobal.com>; DLIST-MLA_APG_Intel
<APG_Intel@MLAGlobal.com>
**Subject:** Re: Troutman Pepper Discrimination Lawsuit

Agreed. I will call her later.

Warm Regards,

Randi

Randi S. Lewis
Managing Director
Major, Lindsey & Africa
rlewis@mlaglobal.com
Office 410.540.7087
Mobile 410.340.3511

---

**From:** Ufberg, Andrew <aufberg@MLAGlobal.com>
**Sent:** Thursday, January 18, 2024 10:54:50 AM
**To:** Patel, Krishna <kpatel@mlaglobal.com>; DLIST-MLA_APG_Intel <APG_Intel@MLAGlobal.com>
**Subject:** Re: Troutman Pepper Discrimination Lawsuit

That's Randi and my candidate fyi however we won't work with her now.

Andy Ufberg
aufberg@mlaglobal.com
267.997.4950

---

**From:** Patel, Krishna <kpatel@mlaglobal.com>
**Sent:** Thursday, January 18, 2024 10:53:27 AM
**To:** DLIST-MLA_APG_Intel <APG_Intel@MLAGlobal.com>
**Subject:** Troutman Pepper Discrimination Lawsuit

---

24.    Seventh, unbeknownst to Ms. Sankano at the time, not only had Ms. Lewis and

Mr. Ufberg unlawfully decided not to work with her, but Eliza Stoker, Executive Director,

Associate Practice Group, had instructed the entire Associate Practice Group not to work with

Ms. Sankano.

25.    As can be seen in the below email, Ms. Stoker claims that the Firm is not "washing its hands" of Ms. Sankano, but it is clear from the words that follow that "washing its hands" of Ms. Sankano is exactly what MLA is doing:

| | |
|---|---|
| **Subject:** | RE: Troutman Pepper Discrimination Lawsuit |
| **Date:** | Thursday, January 18, 2024 at 9:06:56 AM Pacific Standard Time |
| **From:** | Stoker, Eliza |
| **To:** | Lewis, Randi, Ufberg, Andrew, Patel, Krishna, DLIST-MLA_APG_Intel |
| **Attachments:** | image001.jpg |

Hi everybody – for those of you wondering, we are not washing our hands of this candidate, but we do need to exit the paid relationship at this point due to the likelihood of our being subpoenaed should this move forward. Please LMK if you want to talk about it. Thanks!

Eliza Stoker
Executive Director, Associate Practice Group North America
212.421.2276
303.298.5003

**From:** Lewis, Randi <rlewis@mlaglobal.com>
**Sent:** Thursday, January 18, 2024 10:55 AM
**To:** Ufberg, Andrew <aufberg@MLAGlobal.com>; Patel, Krishna <kpatel@mlaglobal.com>; DLIST-MLA_APG_Intel <APG_Intel@MLAGlobal.com>
**Subject:** Re: Troutman Pepper Discrimination Lawsuit

Agreed. I will call her later.

Warm Regards,

Randi

Randi S. Lewis
Managing Director
Major, Lindsey & Africa
rlewis@mlaglobal.com
Office 410.540.7087
Mobile 410.340.3511

**From:** Ufberg, Andrew <aufberg@MLAGlobal.com>
**Sent:** Thursday, January 18, 2024 10:54:50 AM
**To:** Patel, Krishna <kpatel@mlaglobal.com>; DLIST-MLA_APG_Intel <APG_Intel@MLAGlobal.com>
**Subject:** Re: Troutman Pepper Discrimination Lawsuit

That's Randi and my candidate fyi however we won't work with her now.

Andy Ufberg
aufberg@mlaglobal.com
267.997.4950

**From:** Patel, Krishna <kpatel@mlaglobal.com>
**Sent:** Thursday, January 18, 2024 10:53:27 AM
**To:** DLIST-MLA_APG_Intel <APG_Intel@MLAGlobal.com>
**Subject:** Troutman Pepper Discrimination Lawsuit

26.    Ms. Stoker's attempt to recast its decision to "exit" its relationship with Ms. Sankano as being related to a potential subpoena is completely absurd. In any event, regardless of the precise inconvenience that the lawsuit might have on MLA, it is not permitted to retaliate against a job seeker because she filed suit to protest the violation of federal civil rights.

27.    Eighth, on January 26, 2024, the Firm's refusal to work with Ms. Sankano was confirmed by Chima Okoli, a Director in MLA's Associate Practice Group.

28.    Ninth, on March 7, 2023, Ms. Sankano learned that MLA uses "Bullhorn," an internal tracking system, to keep records and notes concerning its clients. Ms. Sankano also learned that Ms. Lewis had written in Ms. Sankano record, in sum and substance, **"and she filed a discrimination lawsuit…sigh."** This note and Ms. Sankano's 2024 resume were subsequently deleted and, upon information and belief, they were deleted within 48 hours of MLA's receipt of Plaintiff' litigation hold notice.

29.    For these reasons, and all those set forth below, Ms. Sankano seeks all available monetary, equitable and/or injunctive relief for Defendants' violation of Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981").

## JURISDICTION AND VENUE

30.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343 as this action involves federal questions regarding the deprivation of Plaintiff's rights under Section 1981.

31.    Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendant Major, Lindsey & Africa is Headquartered in Maryland, and a substantial part of the events or omissions giving rise to this action, including the unlawful retaliation alleged herein, occurred in this district.

32.     Simultaneously with the filing of this Complaint, Ms. Sankano filed a Charge with the Equal Employment Opportunity Commission and the Maryland Commission on Civil Rights within 180 days of the events described herein.  Ms. Sankano is asserting her claims under Title VII and the Maryland Human Relations Act ("MHRA") within 90 days of her receipt of a notice of right to sue.

## PARTIES

33.     Plaintiff Gita F. Sankano is a citizen of Maryland.

34.      Defendant Major, Lindsey & Africa is headquartered at 7320 Parkway Drive S. Hanover, Maryland 21076.

35.     Defendant Andy Ufberg is a Managing Director at Major, Lindsey & Africa and lives and works in the state of Pennsylvania.

36.     Defendant Randi Lewis is a Managing Director at Major, Lindsey & Africa and lives and works in the state of Maryland.

37.     Defendant Eliza Stoker is the Executive Director for the Associate Practice Group at Major, Lindsey & Africa and lives and works in the state of New York.

## FACTUAL ALLEGATIONS

**I.      Major, Linsey & Africa's Bogus Commitment to Diversity and Inclusion**

38.     MLA and its Partners and Directors—including Managing Director, Randi Lewis—purport to be dedicated diversity market leaders with the skills to further diversity and inclusion in the legal market.

39.     However, in Ms. Sankano's experience, MLA has blatantly failed to uphold its public commitment to its diverse candidates.

40.     In recent years, many institutions have implemented increasingly robust initiatives to enhance workforce diversity.

41.    Despite progress in various sectors, the legal industry lags far behind, with Black female lawyers making up a mere 4.5% of the legal workforce.[2]

42.    Further, Partner positions remain largely elusive to Black women.

43.    Given these meager statistics, MLA boasts about its ability as a "diversity market leader" to make meaningful change in the legal industry by employing effective methods to "further diversity and inclusion in the legal market."[3]

44.    It is against this backdrop that Ms. Sankano employed MLA's services.

45.    However, despite MLA's public commitment to diversifying the legal industry, it has not lived up to its commitment.

46.    In fact, MLA's commitment to diversity is so abysmal that when Ms. Sankano stood up to discrimination, she became *persona non grata.*

## II.    <u>Ms. Sankano's Background</u>

47.    Ms. Sankano was born in Harlem to parents who immigrated to the United States in search of a better life for their children.

48.    She was raised in the Bronx by her mother, who worked multiple jobs to give her children a life beyond her own.

49.    Early on, Ms. Sankano's mother instilled in her the importance of education, emphasizing its significance in shaping her future.

50.    Guided by her mother's wisdom, Ms. Sankano made education a focal point, laying a foundation for a successful career.

---

[2]    National Bar Association, World Law Day Report, 14 (2023), https://s3.documentcloud.org/documents/23902001/digital_nba_wld_report_final_digital.pdf.
[3]    https://www.mlaglobal.com/en/about-us/diversity-inclusion (last visited February 25, 2024).

51.    In 2011, Ms. Sankano graduated from The City University of New York, John Jay College of Criminal Justice ("CUNY John Jay") with a B.A. in political science, becoming the first person in her family to graduate from college.

52.    Only three years later, in 2014, Ms. Sankano obtained another exceptional feat and graduated from CUNY John Jay with an M.A. in Public Administration, once again surpassing familial expectations and receiving academic distinction.

53.    In 2016, Ms. Sankano began pursuing her law degree at the University of Maryland Francis King Carey School of Law (University of Maryland Law School).

54.    During her time in law school, Ms. Sankano stood out among her peers, serving as an associate symposium editor for the Journal of Business & Technology Law and a staff editor for The Authority National Affordable Housing Digest.

55.    Her outstanding academic career was underscored when she graduated cum laude in 2018.

56.    Following her graduation, Ms. Sankano began a year-long clerkship for the Honorable Michael W. Reed on the Court of Special Appeals of Maryland.

57.    As Ms. Sankano's clerkship was coming to an end, Ms. Sankano began applying for associate positions in "big law."

58.    During law school, Ms. Sankano's peers always told her that if she ever needed help finding a job, she should reach out to Ms. Lewis at MLA.

59.    An alumnus of the University of Maryland and a former Diversity, Equity and Inclusion recruiter at Miles and Stockbridge P.C., a prominent firm in Maryland, Ms. Lewis was well known as the best recruiter to place diverse candidates.

60.     As such, Ms. Sankano reached out to Ms. Lewis for help finding an associate position following the conclusion of her clerkship.

61.     At the time, however, Ms. Lewis told Ms. Sankano that she could not help her because MLA did not place entry-level associates.

### III.     Troutman Pepper Hamilton Sanders LLP Discriminates Against Ms. Sankano for Being Black and Retaliates Against Her for Making an HR Complaint

62.     Ultimately, Ms. Sankano was hired as an entry-level associate at Pepper Hamilton (now Troutman Pepper Hamilton Sanders LLP) and commenced her employment on August 31, 2019.

63.     To Ms. Sankano, this was a momentous achievement and the first step in a long legal career.

64.     However, from the start, Ms. Sankano was subjected to race discrimination, as her billable hours were micromanaged, and she was treated differently than her white colleagues.

65.     Tragically, on January 9, 2022, after facing relentless hostility and discrimination at the hands of Troutman Partners, Ms. Sankano's situation worsened as her family and community were impacted by a massive fire in a Bronx apartment building. [4]

66.     Ms. Sankano sadly lost two of her cousins to the fire, one of them being only two years old, the youngest victim to have died.

67.     The devastating impact the fires had on Ms. Sankano and her community were, and still are, immeasurable.

68.     As such, Ms. Sankano used her already planned time off, volunteering in the community and mourning with her loved ones.

---

[4]     Kimiko de Freytas-Tamura, "Gambian Residents Bronx Apartment Fire," New York Times, January 12, 2022, https://www.nytimes.com/2022/01/12/nyregion/gambian-residents-bronx-apartment-fire.html.

69.     For anyone, having to go back to work after experiencing such a loss would be hard, but for Ms. Sankano, having to go back to a workplace that mistreated her was unimaginable.

70.     However, as she had done time and time again, Ms. Sankano went back to work, optimistic that her situation would improve.

71.     Unfortunately, the discrimination only intensified and, in August 2023, after receiving a heinous email from one of Troutman's Partners, Matthew Bowsher, Ms. Sankano filed a formal complaint with Human Resources.  Only one month after Troutman concluded its "investigation" into Ms. Sankano's HR complaint, Ms. Sankano was terminated in blatant retaliation for having stood up against race discrimination.

## IV.  Ms. Sankano Reached Out to Randi Lewis, A Purported Diversity, Equity and Inclusion Champion

72.     On November 29, 2023, Ms. Sankano was terminated from Troutman.

73.     Ms. Sankano became instantly worried about her career trajectory and texted Ms. Lewis to inform her that she had been terminated.

74.     On November 30, 2023, Ms. Sankano and Ms. Lewis spoke on the phone.

75.     During the call, Ms. Lewis agreed that MLA would work with Ms. Sankano to find her new employment.  This agreement constituted a contract under the relevant law.  In short, both parties promised to provide things of value that amounted to consideration for the other parties' promises.

76.     By way of example, in allowing MLA to represent her and agreeing to permit MLA to present her to potential employers, Ms. Sankano provided MLA with a diverse, experienced and qualified candidate to present to law firms.  This was a benefit to MLA, which

obviously cannot survive without candidates and which generates revenue from successful candidate placements.

77.     Moreover, in allowing MLA to represent her and agreeing to permit MLA to present her to potential employers, Ms. Sankano provided MLA with a degree of exclusivity in connection with its ability to market her (and, upon a successful placement, earn income).  This is because, once MLA presents a candidate to a prospective employer, that prospective employer is barred from hiring the candidate for a period of time without paying MLA a recruiter fee, even if the candidate comes in the door *via* another avenue.

78.     On the flip side, in allowing MLA to represent her and agreeing to permit MLA to present her to potential employers, Ms. Sankano was impairing her own ability to be hired for at least two reasons.  First, given the forgoing, she effectively precluded herself from obtaining employment through direct outreach to any prospective employer to whom she was presented by MLA.  Second, Ms. Sankano's candidacy for any particular position was hindered in that the prospective employer would have to pay not only her, but also MLA, if it chose to hire her.

79.     For her part, Ms. Sankano stood to benefit from being presented by MLA for a variety of reasons, including the credibility of MLA, its success rate, the third-party advocacy and the reduced chance that her resume would get lost in the mix otherwise.

80.     During their call, Ms. Sankano explained to Ms. Lewis that she believed she had been terminated in retaliation for complaining about a Partner's discriminatory treatment towards her and that she had already reached out to employment attorneys to explore her options.

81.     Ms. Lewis incredulously responded, "I have a lot of white clients who have been let go."  Ms. Sankano was instantly taken aback by this comment.  Obviously, the fact that white lawyers have been let go does not suggest that discrimination does not exist in the workplace.

82.    Ms. Lewis went on to tell Ms. Sankano, **"Whatever you do, do not file [a lawsuit.**]"

83.    Ms. Sankano assured Ms. Lewis that it was her hope that she would not have to file a lawsuit against Troutman.

84.    However, Ms. Sankano instantly felt like Ms. Lewis was not the diversity and equity champion that others held her out to be.

85.    Nevertheless, Ms. Sankano was determined to swiftly get her career back on track.

86.    On December 12, 2023, Ms. Lewis emailed Ms. Sankano sample resumes so that she could begin preparing applications for new associate positions.

87.    Amidst the stress of potential litigation, Ms. Sankano worked diligently to prepare her resume for her impending job search.

88.    On January 9, 2024, Ms. Sankano sent Ms. Lewis her law school transcript and updated resume.

89.    While Ms. Sankano waited to hear back from Ms. Lewis, she spent her time tirelessly looking for jobs.

90.    On January 11, 2024, Ms. Sankano texted Ms. Lewis informing her that she saw a job posting at Law Firm A that matched her expertise.

91.    Their texts are as follows:



92.    Ms. Sankano called Ms. Lewis.

93.    On their call, Ms. Lewis blatantly told Ms. Sankano, **"If you file this lawsuit, I can't place you again.  You will never find you a job."**

94.    Ms. Lewis went on to tell Ms. Sankano that before she could submit her materials for the Law Firm A position in Washington D.C., she needed to talk to her colleague, Mr. Ufberg

95.     As a result of Ms. Lewis' stated apprehension regarding Ms. Sankano's impending lawsuit, Ms. Sankano submitted her materials directly to Law Firm A herself.

96.     On January 16, 2024, Ms. Sankano received an email from Law Firm A asking if she had time for an initial screening interview with the firm's Senior Manager of Associate Recruiting.

97.     Ms. Sankano scheduled an interview with the firm for January 19, 2024.

98.     On January 17, 2024, Ms. Sankano filed a race discrimination and retaliation lawsuit against Troutman.[5]

99.     On January 18, 2024, one day before Ms. Sankano's scheduled interview with the firm, Ms. Sankano received a call from Ms. Lewis informing her that the position in the Washington D.C. office at Law Firm A was no longer available.

100.    Ms. Sankano knew this was a lie, as she was already scheduled for an interview for January 19, 2024.  She confronted Ms. Lewis with this fact, catching Ms. Lewis off guard.

101.    Ultimately, Ms. Lewis stated that she would not work with Ms. Sankano anymore because Ms. Sankano had filed an action against Troutman to vindicate her federally protected civil rights.

102.    Though unbeknownst to Ms. Sankano at the time, Ms. Lewis and Mr. Ufberg had already documented in emails their decision not to work with Ms. Sankano in retaliation for her decision to file suit.

---

[5]     See https://news.bloomberglaw.com/litigation/troutman-pepper-sued-by-black-associate-alleging-bias-reprisal; https://abovethelaw.com/2024/01/former-associate-hits-biglaw-firm-with-racial-discrimination-case-after-dehumanizing-email/; https://www.reuters.com/legal/government/us-law-firm-troutman-sued-discrimination-by-fired-black-lawyer-2024-01-17/

103.    Moreover, also unbeknownst to Ms. Sankano at the time, Ms. Stoker had already directed the entire Associate Practice Group not to work with Ms. Sankano because she had filed suit.

104.    Ms. Stoker absurdly attempted to recast MLA's decision to "exit" its relationship with Ms. Sankano as being related to a potential subpoena.

105.    However, regardless of the precise inconvenience that the lawsuit might have on MLA, it is not permitted to retaliate against a job seeker because she filed suit to protest the violation of federal civil right.

**V.    Ms. Sankano Reached Out to Two More MLA Recruiters; Both Tell Her They Cannot Help Her**

106.    In the face of further retaliation, this time for filing a lawsuit for the discrimination she suffered while at Troutman, Ms. Sankano stood undeterred.

107.    The following week, on January 26, 2024, Ms. Sankano emailed Carlos Pauling, Executive Director of the Partner Practice Group.  She was hoping that, as a Black man, Mr. Pauling would be more understanding of Ms. Sankano's situation and in a better position to help her.

108.    Mr. Pauling explained that he couldn't help Ms. Sankano because his practice focused on Partner placements, however, he put her in contact with Chima Okoli, Director of Associate Practice Group.

109.    Only three hours after initially emailing Mr. Pauling, Ms. Sankano emailed Mr. Okoli with her resume, transcript and writing sample.

110.    Shortly thereafter, Ms. Sankano called Mr. Okoli.

111.    On their call, Mr. Okoli told Ms. Sankano that he **"would have loved to help her because she is a first-generation [attorney], like him, but he can't because [MLA] doesn't want its documents subpoenaed."**

112.    Ms. Sankano was stunned.

113.    It was now abundantly clear to Ms. Sankano that she was being blackballed from MLA, which significantly reduced her chances of being hired at a law firm.  Ms. Sankano was and remains devastated.

## VI.    Defendants' Unlawful Motives Were Put in Writing

114.    As it turns out, Defendants put their unlawful motives in writing – a proverbial "smoking gun:"

## VII.   MLA Destroys Evidence

115.    On March 7, 2023, Ms. Sankano learned that MLA uses "Bullhorn," an internal tracking system, to keep records and notes concerning its clients.  Ms. Sankano also learned that Ms. Lewis had written in Ms. Sankano record, in sum and substance, **"and she filed a discrimination lawsuit...sigh."**  This note was subsequently deleted, and upon information and belief, it was deleted within 48 hours of MLA's receipt of Plaintiff' litigation hold notice.

### FIRST CAUSE OF ACTION
### (Retaliation in Violation of § 1981)
### *(Against All Defendants)*

116.    Plaintiff hereby repeats, reiterates and re-alleges each and every previous allegation as if fully set forth herein.

117.    As described herein, Defendants retaliated against Plaintiff for engaging in protected activity, by *inter alia,* disengaging with Plaintiff for filing a lawsuit.

118.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of § 1981, Plaintiff suffered and continues to suffer, economic damages for which she is entitled to an award of damages.

119.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of § 1981, Plaintiff has suffered and continues to suffer, severe mental and emotional distress for which she is entitled to an award of damages.

120.    Defendants' unlawful retaliatory actions constitute malicious, willful and wonton violations of § 1981 for which Plaintiff is entitled to an award of punitive damages.

## SECOND CAUSE OF ACTION
### (Retaliation in Violation of Title VII)
### *(Against MLA)*

121.    Plaintiff hereby repeats, reiterates and re-alleges each and every previous allegation as if fully set forth herein.

122.    As described herein, MLA retaliated against Plaintiff for engaging in protected activity, by *inter alia,* failing or refusing to refer her for employment because she filed an employment discrimination lawsuit against Troutman.

123.    As a direct and proximate result of MLA's unlawful retaliatory conduct in violation of Title VII, Plaintiff suffered and continues to suffer, economic damages for which she is entitled to an award of damages.

124.    As a direct and proximate result of MLA's unlawful retaliatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer, severe mental and emotional distress for which she is entitled to an award of damages.

125.    MLA's unlawful retaliatory actions constitute malicious, willful and wonton violations of Title VII for which Plaintiff is entitled to an award of punitive damages.

## THIRD CAUSE OF ACTION
### (Retaliation in Violation of the MHRA)
### *(Against MLA)*

126.    Plaintiff hereby repeats, reiterates and re-alleges each and every previous allegation as if fully set forth herein.

127.    As described herein, MLA retaliated against Plaintiff for engaging in protected activity, by *inter alia,* failing or refusing to refer her for employment because she filed an employment discrimination lawsuit against Troutman.

128.    As a direct and proximate result of MLA's unlawful retaliatory conduct in violation of the MHRA, Plaintiff suffered and continues to suffer, economic damages for which she is entitled to an award of damages.

129.    As a direct and proximate result of MLA's unlawful retaliatory conduct in violation of the MHRA, Plaintiff has suffered and continues to suffer, severe mental and emotional distress for which she is entitled to an award of damages.

130.    MLA's unlawful retaliatory actions constitute malicious, willful and wonton violations of the MHRA for which Plaintiff is entitled to an award of punitive damages.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that the Court enter judgment in her favor and against Defendants, containing the following relief:

A.    A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the United States and the State of Maryland;

B.    An injunction and order permanently restraining the Defendants and their officers, officials, agents, successors, employees and/or representatives, and any and all persons acting in concert with and/or on behalf of them, from engaging in any such further unlawful conduct, including the policies and practices complained of herein;

C.    An injunction and order requiring the Defendants to take appropriate action to protect employees, prevent retaliation and provide avenues for prompt and immediate corrective action, with such measures to include, but not be limited to, the measures set forth above;

D.    An award of damages against Defendants in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages;

E.      An award of damages against Defendants in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including, but not limited to, compensation for emotional distress and/or mental anguish;

F.      An award of punitive damages and any applicable penalties in an amount to be determined at trial;

G.      Prejudgment interest on all amounts due;

H.      An award of fees and costs that Plaintiff has incurred in this action, including, but not limited to, expert witness fees, as well Plaintiff's reasonable attorneys' fees and costs to the fullest extent permitted by law; and

I.      Such other and further relief as the Court may deem just and proper.

## <u>JURY DEMAND</u>

Plaintiff hereby demands a trial by jury of all issues of fact and damages stated herein.

Dated: July 15, 2024
        New York, New York                          Respectfully submitted,

                                                     **WIGDOR LLP**

                                                     By:  _____
                                                          Michael J. Willemin
                                                          (admitted *pro hac vice*)

                                                     85 Fifth Avenue
                                                     New York, NY 10003
                                                     Telephone: (212) 257-6800
                                                     Facsimile: (212) 257-6845
                                                     mwillemin@wigdorlaw.com

                                                     *Counsel for Plaintiff*