**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

----------------------------------------------------------- X

GITA F. SANKANO,                              :

                      Plaintiffs,   :   Civil Action No.: 8:24-cv-00951-TJS

                                 :

            v.                              :

MAJOR, LINDSEY & AFRICA; ANDY     :
UFBERG, in his individual and professional
capacity, RANDI LEWIS, in her individual and   :
professional capacity, and ELIZA STOKER, in   :
her individual and professional capacity

                                 :

                    Defendants.   :

----------------------------------------------------------- X

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION TO DISMISS THE AMENDED COMPLAINT

**WIGDOR LLP**

Michael J. Willemin (admitted *pro hac vice*)
Brooke Payton (to be admitted *pro hac vice*)

85 Fifth Avenue
New York, NY  10003
Telephone:  (212) 257-6800
Facsimile:   (212) 257-6845
mwillemin@wigdorlaw.com
bpayton@wigdorlaw.com

*Counsel for Plaintiff*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ...............................................................................................1

BACKGROUND ......................................................................................................................1

ARGUMENT ...........................................................................................................................3

I.        LEGAL STANDARD ON A MOTION TO DISMISS .................................................3

II.       THE AMENDED COMPLAINT SUFFICIENTLY ALLEGES RETALIATION ............3

          A.       Defendants Misrepresent Plaintiff's Minimal Burden at the Pleading Stage .........4

          B.       The Amended Complaint Easily Satisfies Plaintiff's Minimal Burden.................5

          C.       Defendants' Motion Improperly and Prematurely Relies on its Factual Defenses to
                   Plaintiff's Claims in a Futile Effort to Secure Dismissal.......................................7

III.      THE AMENDED COMPLAINT ADEQUATELY PLEADS A VIOLATION OF
          PLAINTIFF'S § 1981 RIGHTS.................................................................................11

          A.       Relevant Legal Standards Specific to 42 U.S.C. § 1981 ......................................11

          B.       A Contract Existed Between Plaintiff and Defendant MLA ................................11

          C.       Defendant MLA's Actions Prevented the Formation of a Contract Between
                   Plaintiff and MLA...............................................................................................13

          D.       Defendant MLA's Actions Prevented the Formation of a Contract Between
                   Plaintiff and Law Firm A .....................................................................................15

CONCLUSION........................................................................................................................18

## TABLE OF AUTHORITIES

**Cases**                                                                     **Page(s)**

Carter v. Dominion Energy, Inc.,
   529 F.Supp.3d 525 (W.D.Va. 2021) ...............................................................16

Painter's Mill Grille, LLC v. Brown,
   716 F.3d 342 (4th Cir. 2013)...............................................................15, 16

Gray v. Charlotte Secondary Sch. Inc.,
   No. 23 Civ. 347 (RJC) (DCK) 2024 WL 2789488 (W.D.N.C. Mar. 29, 2024), report and
   recommendation adopted, No. 23 Civ. 347 (RJC) (DCK), 2024 WL 2787813 (W.D.N.C. May
   30, 2024) ...............................................................5

Ashcroft v. Iqbal,
   556 U.S. 662 (2009)...............................................................3, 4

Bell Atl. Corp. v. Twombly,
   550 U.S. 544 (2007)...............................................................4

Benzinger v. NYSARC, Inc. New York City Chapter,
   385 F.Supp.3d 224 (S.D.N.Y. 2019) ...............................................................15

B-Line Medical, LLC v. Interactive Digital Solutions, Inc.,
   209 Md. App. 22 (Md. Ct. Spec. App. 2012)...............................................................12, 13

Caleca v. Burns,
   No. 23 Civ. 1184 (MSN) (JFA), 2024 WL 4255052 (E.D. Va. Sept. 20, 2024)...........................6

CBOCS West, Inc. v. Humphries,
   553 U.S. 442 (2008)...............................................................11, 13

Clark Cnty. Sch. Dist. v. Breeden,
   532 U.S. 268 (2001)...............................................................6

Domino's Pizza, Inc. v. McDonald,
   546 U.S. 470 (2006)...............................................................13

Erickson v. Pardus,
   551 U.S. 89 (2007)...............................................................3

Harris v. Allstate Ins. Co.,
   300 F.3d 1183 (10th Cir. 2002) ...............................................................15

Johnson v. United Parcel Serv., Inc.,
    839 F. App'x 781 (4th Cir. 2021) ................................................................6

Jones v. Alfred H. Mayer Co.,
    392 U.S. 409 (1968) ....................................................................................11

Lauture v. Int'l Bus. Machines Corp.,
    216 F.3d  (2d Cir. 2000) ..............................................................................11

Mason v. Capitol Office Solutions,
    No. 13 Civ. 2290 (PJM), 2014 WL 4825931 (D.Md. Sept. 23, 2014) .......14

Peer v. First Fed. Sav. & Loan Ass'n,
    273 Md. 610 (1975) .....................................................................................12

Smith v. CSRA,
    12 F.4th 396 (4th Cir. 2021) .........................................................................5

Starbuck v. Williamsburg James City Cnty. Sch. Bd.,
    28 F.4th 529 (4th Cir. 2022) .........................................................................5

Swierkiewicz v. Sorema N. A.,
    534 U.S. 506 (2002) ......................................................................................4

U.S. v. Shabani,
    513 U.S. 10 (1994) ......................................................................................11

Woods v. City of Greensboro,
    855 F.3d 639 (4th Cir. 2017) .....................................................................4, 5

**Statutes**

42 U.S.C. § 1981 ................................................................................ passim

**Other Authorities**

Restatement (Second) of Contracts § 1 (Am. Law Inst. 1979) ....................11

The Jury (or More Accurately the Judge) Is Still Out for Civil Rights and Employment Cases
    Post–Iqbal,
    57 N.Y.L. Sch. L. Rev. 719 (2012–2013) ....................................................4

Plaintiff Gita Sankano ("Plaintiff" or "Ms. Sankano") submits this Memorandum of Law in Opposition to the Motion to Dismiss the Complaint ("Def. Br.") filed by Defendants Major Lindsay & Africa ("MLA" or the "Firm"), Andy Ufberg ("Mr. Ufberg"), Randi Lewis ("Ms. Lewis") and Eliza Stoker ("Ms. Stoker") (together "Defendants"). For the following reasons, Plaintiff respectfully requests that the Defendants' motion be denied in its entirety.

## PRELIMINARY STATEMENT

**"and she filed a discrimination lawsuit . . . sigh."**

-- Randi Lewis's note in Gita Sankano's internal file, and all that the Court
really needs to know to deny Defendants' motion

## BACKGROUND

MLA is a massive attorney recruiting agency with 25 office locations, 200+ recruiters and 1,500+ annual placements. Dkt. No. 33 at ¶ 1. As such, MLA touts itself as the preeminent attorney recruiting company for corporate law and "Big Law" firms. Id. When Plaintiff was terminated from her Associate position at a major law firm called Troutman Pepper Hamilton Sanders LLP ("Troutman") for what she believed to be discriminatory reasons, she went to MLA to find her next position, based on the Firm's reputation for championing diverse candidates. Id. at ¶¶ 38, 43, 72-74. In November 2023, Plaintiff reached out to Randi Lewis, a recruiter from MLA with whom she had worked in the past. Id. at ¶¶ 58-61, 73-74. While speaking on the phone, Ms. Lewis agreed to work with Plaintiff to find a new position, an agreement that benefited Ms. Lewis, Plaintiff and MLA all together. Id. at ¶¶ 74-79. During this call, Plaintiff explained to Ms. Lewis that she believed she had been fired in retaliation for speaking out about discriminatory treatment that she experienced at Troutman. Id. at ¶ 80. She also told Ms. Lewis that she

was exploring her legal options regarding the discrimination and retaliation.  Id.  Ms. Lewis responded, "I have a lot of white clients who have been let go."  Id. at ¶ 81.  Plaintiff was taken aback and felt that Ms. Lewis was insinuating that Plaintiff's discriminatory experiences were not real.  Id.  Ms. Lewis went on to tell Plaintiff, "Whatever you do, do not file [a lawsuit]."  Id. at ¶ 82.  Nevertheless, Plaintiff continued her working relationship with Ms. Lewis, even amidst the stress of potential litigation.  Id. at ¶¶ 85-89.

In January 2024, Plaintiff reached out to Ms. Lewis about a position she found that matched her experience and expertise.  Id. at ¶¶ 90-91.  They arranged a call to discuss the position, and on that call, Ms. Lewis told Plaintiff, "If you file this lawsuit, I can't place you again.  I will never find you a job."  Id. at ¶ 93.  Ms. Lewis also said that she would need to speak to her colleague, Mr. Ufberg, before submitting Plaintiff's materials for the position.  Id.  Growing suspicious that Ms. Lewis was feeling increasingly apprehensive about her potential lawsuit, Plaintiff submitted her materials to the law firm for the position herself a few days later and secured an interview for January 19, 2024.  Id. at ¶ 95-97.

On January 17, 2024, Plaintiff filed a race discrimination and retaliation lawsuit against Troutman.  Id. at ¶ 98.  On January 18, 2024, one day before her scheduled interview with the new firm, Ms. Lewis called Plaintiff to tell her that the position was no longer available.  Id. at ¶ 99.  Obviously, Plaintiff knew this was a lie, as she was already scheduled for an interview for the following day, and she confronted Ms. Lewis with this information, catching her off guard.  Id. at ¶ 100.  Ultimately, Ms. Lewis told Plaintiff on this call that she would not work with her anymore because of the lawsuit that Plaintiff had filed to vindicate her own federally protected civil rights.  Id. at ¶ 101.

Meanwhile and without Plaintiff's knowledge, Ms. Lewis and Mr. Ufberg had documented their decision not to work with her in emails.  Id. at ¶ 102, 114.  Further, Ms. Stoker had directed the entire Associate Practice Group not to work with Plaintiff because she had filed suit.  Id. at ¶ 103.  However, this did become apparent to Plaintiff when she reached out to other MLA recruiters, such as Chima Okoli, and was told that they couldn't help her because MLA "doesn't want its documents subpoenaed."  Id. at ¶¶ 109-11.  Plaintiff was stunned and couldn't believe that she was being discriminated against all over again.  Id. at ¶ 112.  In a now-deleted note in Plaintiff's file on "Bullhorn," an internal tracking system that MLA uses for its clients, Ms. Lewis had written, "and she filed a discrimination lawsuit . . . sigh."  Id. at ¶ 115.

All of this to say, when Plaintiff exercised her federally protected civil rights and filed a lawsuit for racial discrimination against her former firm, MLA immediately blackballed her, lied to her about potential employment opportunities and refused to work with her.  Upon facing such blatant racial discrimination for a second time in a short period, Plaintiff filed this lawsuit on April 2, 2024.  Dkt. No. 1.  Defendants filed a motion to dismiss on June 4, 2024, Dkt. No. 23, and Plaintiff amended her complaint in response on July 22, 2024.  Dkt. No. 33.  Defendants then filed another motion to dismiss on August 16, 2024, Dkt. No. 35-1, to which Plaintiff now opposes.

## ARGUMENT

## I.   LEGAL STANDARD ON A MOTION TO DISMISS

On a motion to dismiss for failure to state a claim, "a judge must accept as true all the factual allegations contained in the complaint."  Erickson v. Pardus, 551 U.S. 89, 94 (2007).  The complaint need only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678

3

(2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  "A claim has

facial plausibility when the plaintiff pleads factual content that allows a court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  <u>Iqbal</u>, 556

U.S. at 678.

II.       <u>THE AMENDED COMPLAINT SUFFICIENTLY ALLEGES RETALIATION</u>

    A.       **Defendants Misrepresent Plaintiff's Minimal Burden at the Pleading
<u>Stage</u>**

       To begin, Defendants improperly suggest that Plaintiff must plead the elements of a

*prima facie* case of retaliation in order to survive a motion to dismiss.  <u>See</u> Def. Br. at p. 7.

However, both the Supreme Court and the Fourth Circuit have made clear that a plaintiff

"need not plead facts sufficient to establish a prima facie case of [retaliation] to survive a

motion to dismiss."  <u>Woods v. City of Greensboro</u>, 855 F.3d 639, 648 (4th Cir. 2017) (citing

<u>Swierkiewicz v. Sorema N. A.</u>, 534 U.S. 506, 510 (2002)).  All Plaintiff is required to do is

set forth allegations "sufficient to raise a right to relief above the speculative level,

including facts sufficient to state a claim that is plausible on its face."  <u>Woods</u>, 855 F.3d at

647 (quotations and citations omitted).  Critically, the Fourth Circuit has cautioned courts

to show restraint in dismissing civil rights (in this case, retaliation), claims:

> In reaching our conclusion [denying a motion to dismiss], we
> note that **discrimination claims are particularly vulnerable
> to <u>premature</u> dismissal because civil rights plaintiffs often
> plead facts that are consistent with both legal and illegal
> behavior, and civil rights cases are more likely to suffer
> from information-asymmetry, pre-discovery**.  *See, e.g.*,
> Suzette M. Malveaux, *The Jury (or More Accurately the
> Judge) Is Still Out for Civil Rights and Employment Cases
> Post*–Iqbal, 57 N.Y.L. Sch. L. Rev. 719, 722–23 (2012–2013).
> There is thus a real risk that legitimate discrimination claims,
> particularly claims based on more subtle theories of
> stereotyping or implicit bias, will be dismissed should a judge

4

substitute his or her view of the likely reason for a particular action in place of the controlling plausibility standard. Such an approach especially treads through doctrinal quicksand when it is undertaken without the benefit of a developed record, one essential to the substantiation or refutation of common sense allegations of invidious discrimination.

Id. at 652 (emphasis added).

With this in mind, the court in Gray v. Charlotte Secondary Sch. Inc. recently reiterated the Fourth Circuit's directive that "civil rights cases should not be dismissed too early, '**unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory** which might plausibly be suggested by the facts alleged.'" No. 23 Civ. 347 (RJC) (DCK), 2024 WL 2789488, at *4 (W.D.N.C. Mar. 29, 2024), report and recommendation adopted, No. 23 Civ. 347 (RJC) (DCK), 2024 WL 2787813 (W.D.N.C. May 30, 2024) (emphasis added) (quoting Starbuck v. Williamsburg James City Cnty. Sch. Bd., 28 F.4th 529, 534 (4th Cir. 2022)).

**B.**      **The Amended Complaint Easily Satisfies Plaintiff's Minimal Burden**

Defendants do not dispute, nor could they, that Plaintiff engaged in protected activity (filing suit against Troutman) and suffered an adverse action (MLA's refusal to work with Plaintiff). Indeed, in Defendants' own words, the only "element" of a retaliation claim that they challenge is "causation." However, the Complaint alleges, and Defendants do not deny, that the decision not to work with Plaintiff was made *immediately* upon learning that she had engaged in protected activity by filing suit against Troutman. It is black letter law that such temporal proximity is sufficient to establish causation, particularly at the pleading stage. See, e.g., Smith v. CSRA, 12 F.4th 396, 419 (4th Cir. 2021) ("DEA's adverse action, taken within days of Quinn learning of the complaint, also

'bears sufficient temporal proximity to [Smith's] protected activity' to suggest that the adverse action was taken because of the protected activity.") (citations omitted); <u>Johnson v. United Parcel Serv., Inc.</u>, 839 F. App'x 781, 784 (4th Cir. 2021) (to establish causation, "a plaintiff may establish that the adverse act bears sufficient temporal proximity to the protected activity"); <u>Caleca v. Burns</u>, No. 23 Civ. 1184 (MSN) (JFA), 2024 WL 4255052, at *8 (E.D. Va. Sept. 20, 2024) ("action taken within days of . . . learning of the complaint . . . bears sufficient temporal proximity . . . to suggest that the adverse action was taken because of the protected activity") (quotations and citations omitted); <u>see</u> <u>also</u> <u>Clark Cnty. Sch. Dist. v. Breeden</u>, 532 U.S. 268, 273 (2001) (citing to cases where "very close" temporal proximity was found to be "sufficient evidence of causality").

Given that the Amended Complaint pleads causation through temporal proximity, no additional allegations concerning causation are necessary to satisfy Plaintiff's burden at the pleading stage. However, it bears noting that Plaintiff does include a number of additional allegations to demonstrate that MLA refused to work with her because she filed a discrimination suit, including, *inter alia*, direct admissions and other evidence:

- "Ms. Lewis also told Ms. Sankano that she could no longer work with her because she filed a race discrimination and retaliation suit against Troutman." Dkt. No. 33 at ¶ 21. This is a direct admission.

- "During their call, Ms. Sankano explained to Ms. Lewis that she had been subjected to race discrimination at Troutman and terminated in retaliation for complaining about discrimination. Without any basis whatsoever, and without knowing any of the relevant facts, Ms. Lewis incredulously responded, 'I have a lot of white clients who have been let go.' Apparently, Ms. Lewis – who is a lawyer and recruiter – is of the belief that there is no such thing as discrimination because sometimes white people lose their jobs." <u>Id.</u> at ¶ 18. This allegation demonstrates animus towards minorities who pursue claims of discrimination.

6

- Ms. Lewis received an email that expressly described the nature of the suit against Troutman: "Black former associate at Troutman Pepper sued the law firm in D.C. federal court, claiming she was discriminated against and then fired for complaining about her treatment. Plaintiff Gita Sankano said she was fired in retaliation for filing an internal discrimination complaint against a partner who demeaned and demoralized her." Ms. Lewis's response was, "I represent her and told her not to sue." Id. at ¶ 114.

- In response to the same email, Mr. Ufberg wrote, "we won't work with her now." Id.

- In MLA's internal tracking system, Ms. Lewis had written about Ms. Sankano, in sum and substance, **"and she filed a <u>discrimination</u> lawsuit…sigh."** This, again, is a direct demonstration of animus not just because Plaintiff filed a suit, but because she filed a discrimination suit. Knowing this, the note was deleted shortly after MLA received a preservation notice, which itself shows a consciousness of guilt. Id. at ¶ 115.

- "MLA openly blackballs and unlawfully eliminates from consideration victims of race discrimination who have the courage to speak out against it." Id. at ¶ 3.

Given these allegations, there is plainly no merit whatsoever to Defendants' contention that Plaintiff has failed to plead causation.

### C. Defendants' Motion Improperly and Prematurely Relies on its Factual Defenses to Plaintiff's Claims in a Futile Effort to Secure Dismissal

Given that the Amended Complaint pleads causation, the inquiry should stop and Defendants' motion should be denied. However, in an abundance of caution, Defendants' "arguments" will be addressed.

**To begin**, Defendants prematurely argue that they stopped working with Plaintiff not out of a desire to "punish" her, but because of their own economic self-interest. This argument fails for two obvious reasons.

First, Plaintiff *did not plead* that MLA refused to work with her because it would be unable to place her. While Ms. Lewis *told* Plaintiff that she would not be employable if she

7

filed suit, Plaintiff does not accept that (or plead) that she was unplaceable,[1] nor did she

plead that Ms. Lewis actually believed that.  That may be Defendants' defense, but it is for

a jury ultimately to decide why Defendants refused to work with Plaintiff.

Second, even if Defendants did believe that it would be more difficult to place

Plaintiff if she filed suit, the record makes clear that the reason they held this belief is

because of the nature of the suit; *e.g.*, Ms. Lewis telling Ms. Sankano that she could no

longer work with her because she filed a race discrimination and retaliation suit and noting that

Ms. Sankano, "filed a discrimination lawsuit...sigh," among the other allegations recited *supra*

at pp. 6-7.

Third, and perhaps most importantly, a company is not permitted to discriminate or

retaliate against someone because doing so would help their bottom line.  There is no

exception for economic hardship in the applicable civil rights statutes.[2]  MLA was no more

entitled to end its relationship with Plaintiff because she filed a civil rights suit than it

would be to refuse to work with women or minorities based on a misguided perception that

they are more likely to have success placing white employees.

**Next**, Defendants seem to suggest that they would have blackballed Plaintiff for

filing any type of suit.  <u>See</u> Def. Br. at p. 9 ("There are no factual allegations suggesting

that Plaintiff's pursuit of race-based claims against her former firm (as opposed to any

other type of claims) factored into Defendants' decision-making."), p. 11 ("the only fair

inference to be drawn from Plaintiff's allegations is that MLA would have discontinued its

---

[1]      In fact, Plaintiff is now employed.

[2]      By contrast, the Americans with Disabilities Act does consider economic burden in determining
whether an employer is obligated to accommodate a disability.

relationship with her if she had filed any claims against Troutman, regardless of their nature"). This argument also is premature and meritless.

First, if Defendants want to take the implausible position that they blackball everyone who sues an employer, regardless of the nature of the suit, they can produce discovery proving that defense and present it to a jury. However, Plaintiff did not plead that Defendants refuse to work with anyone who files suit.

Second, even if it is Defendants' policy not to work with candidates who have sued their prior employers, that policy is flatly illegal when applied to candidates who have brought civil rights claims against their prior employers. Indeed, if Defendants' position were accepted, a company could institute a policy prohibiting Human Resources ("HR") complaints, and terminate everyone who complains to HR, without facing any legal liability when the complaint is of a protected nature. A company cannot lawfully subject someone to an adverse action because that person engages in protected activity, even if it would subject someone else to the same adverse action for a similar but non-protected reason.

Third, even if MLA were able to show that it refuses to work with anyone who has filed litigation against a former employer, that policy itself would be unlawful, as it would plainly have a unlawful disparate impact on women and minorities, who are far more likely to file discrimination suits than white men (and therefore would more often be negatively impacted by a "no-lawsuit" policy).

**Finally,** Defendants attempt to establish their defense through the allegations in the Amended Complaint.

9

First, Defendants point to allegations that Ms. Lewis has a reputation for placing diverse candidates.  Def. Br. at p. 11.  Incredibly, Defendants fail to acknowledge that Plaintiff goes on to allege that Ms. Lewis is a fraud in this regard.  Dkt. No. 33 at ¶ 16.  In any event, the fact that Ms. Lewis has a reputation for placing diverse candidates does not in any way suggest that she is incapable of retaliation, much less establish an inability to retaliate such that this case should be dismissed at the pleading stage.

Second, Defendants suggest that Ms. Lewis could not have engaged in retaliation because she was willing to work with Plaintiff after she learned that she had complained *internally* at Troutman.  This is a red herring because the Amended Complaint explicitly pleads (and the documents embedded therein prove) that Ms. Lewis decided not to work with Plaintiff because she filed a civil rights suit.

Finally, Defendants point to Ms. Lewis's statements that she would not be able to place Plaintiff if she filed suit and claim that such statements support the conclusion that the nature of the suit had nothing to do with the decision not to work with Plaintiff.  Again, Plaintiff alleged Ms. Lewis's statements, but does not adopt them as being truthful.  In any event, as explained above, a defendant does not escape liability when it subjects someone to an adverse action because that person engages in protected activity, even if it would subject someone else to the same adverse action for a similar but non-protected reason. See *supra* at pp. 5-6.

In sum, Plaintiff pleaded myriad facts sufficient to establish causation, and none of Defendants "arguments" can or do "undo" Plaintiff's causation allegations such that her claims should be dismissed.

### III.    THE AMENDED COMPLAINT ADEQUATELY PLEADS A VIOLATION OF PLAINTIFF'S § 1981 RIGHTS

#### A.    Relevant Legal Standards Specific to 42 U.S.C. § 1981

Under § 1981, "[a]ll persons . . . within the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a).  In particular, the statute defines "making and enforcing contracts" to include "the making, performance, modification and termination of contracts and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship." Id. at § 1981(b).  The U.S. Supreme Court has since held that § 1981 encompasses claims of retaliation as well.  CBOCS West, Inc. v. Humphries, 553 U.S. 442, 457 (2008).

The meaning of "contract" under § 1981 is broad, particularly as it is a Reconstruction era civil rights law.  See Jones v. Alfred H. Mayer Co., 392 U.S. 409, 437 (1968) (holding that such laws "leave[] no doubt that . . . we must accord [them] a sweep as broad as [their] language"); U.S. v. Shabani, 513 U.S. 10, 13 (1994) ("Absent contrary indications, Congress intends to adopt the common law definition of statutory terms.").  A contract is "a promise or set of promises for the breach of which the law gives a remedy or the performance of which the law recognizes in some way as a duty."  Restatement (Second) of Contracts § 1 (Am. Law Inst. 1979); see also Lauture v. Int'l Bus. Machines Corp., 216 F.3d 358, 261 (2d Cir. 2000) (holding that, in drafting § 1981, Congress intended the term "contract" to have its ordinary meaning).

#### B.    A Contract Existed Between Plaintiff and Defendant MLA

In their Motion to Dismiss, Defendants argue that there was no contractual relationship between Plaintiff and MLA.  Under Maryland law, "the elements of a contract

11

are offer, acceptance and consideration." <u>B-Line Medical, LLC v. Interactive Digital</u> <u>Solutions, Inc.</u>, 209 Md. App. 22, 46 (Md. Ct. Spec. App. 2012) (citing <u>Peer v. First Fed.</u> <u>Sav. & Loan Ass'n</u>, 273 Md. 610, 614 (1975)).  In this case, Plaintiff has adequately pleaded these three elements.  The Amended Complaint easily establishes the existence of both an offer and acceptance by alleging that upon being unlawfully terminated from Troutman, Plaintiff reached out to Ms. Lewis for help finding her next role, and Ms. Lewis agreed that MLA would work with her in securing this new employment.  Dkt. No. 33 at ¶¶ 72-75.  This clearly shows Plaintiff offering her candidacy to MLA for placement, and MLA, through Ms. Lewis, accepting Plaintiff's offer and agreeing to try to secure her new employment.  In fact, contrary to Defendants' present position, even Ms. Lewis contemporaneously documented this agreement by writing to her colleagues, "**I represent her.**"  <u>Id.</u> at ¶ 114 (emphasis added).

Next, Plaintiff has adequately alleged that there was legal consideration for this recruiting contract.  As alleged in her Amended Complaint, Plaintiff provided MLA with a strong candidate (herself) to present to law firms.  <u>Id.</u> at ¶ 76.  This was a benefit to MLA, as its business relies on the successful placement of candidates in order to generate revenue.  <u>Id.</u>  In turn, MLA was required to put in time and effort to market Plaintiff to potential firms and do its best to match her with a good fit.  <u>Id.</u>  On the other hand, Plaintiff was provided with employment prospects with the credibility of MLA, a probable future job placement and Ms. Lewis's guidance during the whole process.  <u>Id.</u> at ¶ 79.  And in turn, Plaintiff provided MLA with a degree of exclusivity, which limited her search to only firms who worked with MLA and who were willing to pay not only Plaintiff but also

12

MLA's placement fee.  Id. at ¶ 78.  These benefits and concessions for each side constitute legal consideration sufficient to plead this element of a valid contract.

In their Motion to Dismiss, Defendants argue that MLA enters into contracts with law firms only, not job seekers who request their services.  While MLA undoubtedly does enter into contracts with law firms in order to receive their recruiting fee after placing a candidate in a new role, MLA also enters into agreements with job seekers, as it did here. The fact that the agreement was not reduced to a formal writing is irrelevant.  Defendants also seem to argue that because no money changed hands (or would change hands) between Plaintiff and Ms. Lewis, that this is a "critical" flaw in Plaintiff's pleadings.[3]  Def. Br. at p. 18.  But monetary exchange is not an element of a valid contract under Maryland law, or any other law for that matter.  As long as there is offer, acceptance and consideration, as Plaintiff has adequately pleaded here, then there exists a contract under Maryland law.  See B-Line Medical, 209 Md. App. at 46.

## C. Defendant MLA's Actions Prevented the Formation of a Contract Between Plaintiff and MLA

If the Court somehow determines that a valid agreement was not formed between Plaintiff and Defendants, then it was MLA's actions that prevented the formation of such a contract, which is still a violation of § 1981.  "Section 1981 offers relief when racial discrimination blocks the creation of a contractual relationship . . . so long as the plaintiff . . . would have rights under the . . . proposed contractual relationship."  Domino's Pizza, Inc. v. McDonald, 546 U.S. 470, 476 (2006).  Section 1981 also "encompasses retaliation claims" for opposing race discrimination as well.  CBOCS West, Inc., 553 U.S. at 457; see

---

[3]      Interestingly, MLA's own recruiters, in plotting to rid themselves of Plaintiff after she filed her discrimination lawsuit against Troutman, referred to Plaintiff's relationship with MLA as a "paid relationship."  Dkt. No. 33 at ¶114.

13

also <u>Mason v. Capitol Office Solutions</u>, No. 13 Civ. 2290 (PJM), 2014 WL 4825931, at *4 (D.Md. Sept. 23, 2014) (denying motion to dismiss on retaliation claim under § 1981). Thus, Plaintiff alleged that Defendants retaliated against her by dropping her as a job-seeking client when she engaged in protected activity and filed her racial discrimination lawsuit against Defendants.

In the Amended Complaint, Plaintiff alleges that Ms. Lewis repeatedly told her not to file her discrimination lawsuit against Troutman – essentially discouraging her from engaging in protected activity to vindicate her civil rights. Ms. Lewis told Plaintiff, "Whatever you do, do not file [a lawsuit.]" Dkt. No. 33 at ¶ 82. Later, on the phone, Ms. Lewis told Ms. Sankano, "If you file this lawsuit, I can't place you again. I will never find you a job." <u>Id.</u> at ¶ 93. To be even more clear, Plaintiff alleged that Defendants put their unlawful and discriminatory motives in writing. After being sent a link to and a description of Plaintiff's discrimination lawsuit against Troutman, MLA recruiters wrote to each other: "I told her not to sue," "we won't work with her now" and "we do need to exit the paid relationship at this point." <u>Id.</u> at ¶ 114. In a now-deleted note in Plaintiff's file on "Bullhorn," Ms. Lewis wrote, "and she filed a discrimination lawsuit . . . sigh." <u>Id.</u> at ¶ 115. These documented statements surely evince the unlawful retaliatory motives behind MLA's actions of dropping Plaintiff as a job-seeking client and preventing the formation of a contract between Plaintiff and MLA. This interference with contract formation is one of the enumerated activities that § 1981 protects against.

Perhaps a jury will find that Plaintiff only had the seeds of a contract with MLA, but clearly, if it were not for Defendants' unlawful actions, those seeds would have matured into a true contract. Plaintiff is a highly educated, accomplished and experienced attorney

who often stood out among her peers.  Id. at ¶¶ 51-56.  She was working hard to prepare her resume and other materials for Ms. Lewis, all while under the impression that Ms. Lewis would be able to help find her next role.  Id. at ¶¶ 85-89.  And Ms. Lewis would have placed Plaintiff with a new firm and would have been compensated for that placement, if it weren't for Defendants' retaliatory conduct.  It was Defendants' retaliatory actions that caused the recruiting relationship to break down.

### D.     Defendant MLA's Actions Prevented the Formation of a Contract Between Plaintiff and Law Firm A

Finally, Defendants also interfered with the formation of a contract between Plaintiff and potential employers, in violation of § 1981.  To establish this, a plaintiff must plead that the interfering party "actually had the power or authority to prevent [a plaintiff] from contracting with the third party."  Benzinger v. NYSARC, Inc. New York City Chapter, 385 F.Supp.3d 224, 233 (S.D.N.Y. 2019) (citing to Harris v. Allstate Ins. Co., 300 F.3d 1183, 1197 (10th Cir. 2002) (requiring that "the [interfering] party both possessed sufficient authority to significantly interfere with the individual's ability to obtain contracts with third parties and that the [interfering] party actually exercised that authority to the individual's detriment")).

The issue of interference with third-party contracts has only been addressed sparingly in the Fourth Circuit.  In Painter's Mill Grille, LLC v. Brown, the plaintiff sued a group of lawyers representing the plaintiff's landlord over racially discriminatory comments that the lawyers made to prospective buyers of the plaintiff's business.  716 F.3d 342, 350 (4th Cir. 2013).  The Court found that there was no interference with the plaintiff's potential future contract with the third-party prospective buyers because the plaintiff did not allege that the lawyers possessed sufficient authority to interfere nor that

15

the lawyers were exercising that authority when making those remarks.  Id. at 351.  In Carter v. Dominion Energy, Inc., the plaintiffs sued Dominion because a Dominion employee told their employer that they were banned from Dominion sites.  529 F.Supp.3d 525, 535-36 (W.D.Va. 2021).  Their employer only supplied labor to Dominion sites, so since the plaintiffs were banned from those sites, they were terminated.  Id. at 536.  However, like in Painter's Mill Grille, the Court found that the plaintiffs failed to adequately allege that the third-party Dominion employee had any authority over Plaintiff's employment contract nor that the Dominion employee was acting on that authority when he told their employer that they had been banned from Dominion sites.  Carter, 529 F.Supp.3d at 541.  In both Painter's Mill Grille and Carter, the plaintiffs did not plead enough to show this type of third-party § 1981 violation.

By contrast, in Plaintiff's case here, she has adequately alleged in her Amended Complaint that she was working with Defendants specifically because of their unique ability to get her, a diverse candidate, a successful placement with a new law firm.  Dkt. No. 33 at ¶¶ 58-59, 79.  Defendants' entire role in this relationship was to aid in the formation of a contract between Plaintiff and a potential new employer, including Law Firm A, which Plaintiff specifically discusses in her Amended Complaint allegations.  Id. at ¶¶ 90-91, 94-100.  Her allegations state that she shared the job at Law Firm A with Ms. Lewis in hopes that Ms. Lewis would assist her in preparing and submitting her materials for the Law Firm A job.  Id. at ¶¶ 90-91.  Ms. Lewis told Plaintiff that she needed to speak to her colleague, Mr. Ufberg, before submitting Plaintiff's application to Law Firm A.  Id. at ¶ 94.  Suspicious of Ms. Lewis because of her comments about Plaintiff's potential lawsuit, Plaintiff submitted her materials to Law Firm A directly and independently.  Id. at

16

¶ 95.  Plaintiff received an interview offer from Law Firm A one day, and the next day, she was told by Ms. Lewis that the Law Firm A position was no longer available.  Id. at ¶¶ 96-99.  When she confronted Ms. Lewis with her own lie, Plaintiff alleges that Ms. Lewis was caught off guard and ultimately stated that "she would not work with Ms. Sankano anymore because Ms. Sankano had filed an action against Troutman to vindicate her federally protected civil rights."  Id. at ¶¶ 100-01.

The factual allegations of this case clearly show that Plaintiff was qualified for the Law Firm A position and would have been able to secure an interview through her relationship with Defendants.  Landing a job with a new firm would involve an employment contract between Plaintiff and that firm.  Yet, due to Defendants' actions, and the racially discriminatory motive behind those actions, she was unable to form such a contract with Law Firm A, and likely many other potential firms.  Plaintiff's Amended Complaint adequately alleges that Defendants both possessed sufficient authority to significantly interfere with her ability to obtain contracts with potential law firms and that Defendants actually exercised that authority to Plaintiff's detriment.  Therefore, under § 1981 and the applicable caselaw, Plaintiff has adequately pleaded violations of § 1981.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully submits that Defendants' motion

must be denied in its entirety.

Dated:  September 24, 2024
        New York, New York

Respectfully submitted,

**WIGDOR LLP**

By: _____
        Michael J. Willemin (admitted *pro hac
        vice*)
        Brooke Payton (to be admitted *pro hac
        vice*)

85 Fifth Avenue
New York, New York 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
mwillemin@wigdorlaw.com
bpayton@wigdorlaw.com

*Counsel for Plaintiff*