IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| GITA F. SANKANO,<br><br>        Plaintiff,<br>v.<br><br>MAJOR, LINDSEY & AFRICA, LLC,<br>ANDY UFBERG, RANDI LEWIS,<br>and ELIZA STOKER<br><br>        Defendants. | Case No. 8:24-cv-00951-TJS<br><br>Hon. Timothy J. Sullivan |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR**
**RULE 12(b)(6) MOTION TO DISMISS AMENDED COMPLAINT**

Kraig B. Long (Fed. Bar No. 25747)
Jeffrey T. Johnson (Fed Bar No. 1724768)
Maya R. Foster (Fed. Bar No. 30733)
NELSON MULLINS RILEY & SCARBOROUGH, LLP
100 South Charles Street, Suite 1600
Baltimore, Maryland 21201
Phone: (443) 392-9400
Facsimile: (443) 392-9499
kraig.long@nelsonmullins.com
jeffrey.johnsono@nelsonmullins.com
maya.foster@nelsonmullins.com

David J. Doyle (pro hac vice)
Alexander A. Pabon (pro hac vice)
SMITH, GAMBRELL & RUSSELL LLP
311 South Wacker Drive, Suite 3000
Chicago, Illinois 60606
Phone: (312) 360-6000
Facsimile: (312) 360-6520
ddoyle@sgrlaw.com
apabon@sgrlaw.com

Kathryn T. Lundy (pro hac vice)
SMITH, GAMBRELL & RUSSELL LLP
1301 6th Avenue, 21st Floor
New York, New York 10019
Phone: (646) 887-9582
Facsimile: (646) 887-8173
klundy@sgrlaw.com

**TABLE OF CONTENTS**

Page

INTRODUCTION ..................................................................................................................... 1

ARGUMENT .............................................................................................................................. 2

I.  MLA Did Not Misstate the Applicable Pleading Standard ............................................... 2

II. Plaintiff's Allegations of Temporal Proximity Do Not Save Her Claims from Dismissal............................................................................................................................ 4

III. Plaintiff's Remaining Allegations—Unrelated to Temporal Proximity—Do Not Save Her Claims from Dismissal........................................................................................ 8

IV. Plaintiff's Section 1981 Claim Should Be Dismissed for the Additional Reason that No Contract Existed Between the Parties ........................................................................... 9

V.  The Court Should Reject Plaintiff's Highly Speculative Argument that MLA's Actions Prevented the Formation of a Contract Between Her and MLA ......................... 12

VI. No Allegations Support Plaintiff's Conclusory Assertion that MLA Interfered with the Formation of a Contract between Plaintiff and "Law Firm A".................................. 13

CONCLUSION............................................................................................................................ 14

# **TABLE OF AUTHORITIES**

**Cases**                                                                                               **Page(s)**

*Ali v. BC Architects Eng'rs., PLC*,
   832 F. App'x 167 (4th Cir. 2020) ...................................................................................6

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..............................................................................................3, 4, 8, 12

*Barrett v. Lucent Techs., Inc.*,
   36 F. App'x 835 (6th Cir. 2002) .....................................................................................7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..................................................................................................3, 4, 8

*Bing v. Brivo Sys., LLC*,
   959 F.3d 605 (4th Cir. 2020) .......................................................................................7, 8

*Carmack v. Virginia*,
   2018 WL 5817345 (W.D. Va. Nov. 6, 2018) .................................................................3

*Dolan v. McQuaide*,
   215 Md. App. 24 (2013) ................................................................................................11

*Edwards v. City of Goldsboro*,
   178 F.3d 231 (4th Cir. 1999) ..........................................................................................4

*Kantsevoy v. LumenR LLC*,
   301 F. Supp. 3d 577 (D. Md. 2018)..............................................................................10

*McClearly-Evans v. Maryland Dept. of Transp.*,
   780 F.3d 582 (4th Cir. 2015) ......................................................................................7, 8

*Mogavera v. Silverstein*,
   142 Md. App. 259 (2002) .......................................................................................10, 11

*Montell v. Diversified Clinical Servs., Inc.*,
   757 F.3d 497 (6th Cir. 2014) ......................................................................................5, 6

*Painter's Mill Grille, LLC v. Brown*,
   716 F.3d 342 (4th Cir. 2013) ........................................................................................13

*Rigney v. Cyberpoint3 Holdings, LLC*,
   2024 WL 3729110 (D. Md. Aug. 8, 2024) ...................................................................10

*Saas v. Major, Lindsey & Africa, LLC*,
   2024 WL 2113654 (D. Md. May 10, 2024)....................................................................6


*Woods v. City of Greensboro*,
   855 F.3d 639 (4th Cir. 2017) ....................................................................................2, 3, 4

**Other Authorities**

Rule 12(b)(6)......................................................................................................................14

**INTRODUCTION**

Plaintiff's Opposition does not dispute the key legal principle that requires dismissal of her claims—that to survive dismissal, she needed to allege facts showing that MLA's alleged adverse action against her resulted from its desire to retaliate against her for filing race-based claims, not simply for filing a lawsuit that happens to *contain* race-based claims. This principle dooms her entire lawsuit because one cannot infer from Plaintiff's allegations that MLA severed ties with her because she attempted to vindicate her civil rights by bringing discrimination claims against her former firm. A far more likely explanation that is entirely consistent with Plaintiff's allegations is that MLA believed Plaintiff's filing of *any* lawsuit against her old firm would be such an obstacle to finding her a new job that MLA no longer believed it made sense to work with her. This was not an act of self-interest; it was in *Plaintiff's* interests as well. As Plaintiff admits, by working with MLA, her "candidacy for any particular position was hindered in that the prospective employer would have to pay not only her, but also MLA, if it chose to hire her." (ECF No. 33 ("Am. Compl.") ¶ 78.)

Under the facts alleged, Plaintiff gave MLA no reason to retaliate against her. Nonetheless, in an attempt to convince the Court that she plausibly alleged MLA had a retaliatory intent, Plaintiff argues that: (1) MLA misapprehends the applicable pleading standard; (2) a close "temporal proximity" between the alleged protected activity and the alleged adverse action, by itself, sufficiently pleads causation; and (3) even if one disregards this temporal proximity, Plaintiff has alleged sufficient facts from which a retaliatory intent may be inferred. As discussed below, Plaintiff is wrong on all three counts, and the Court should dismiss her entire complaint because of this pleading deficiency.

Plaintiff's Opposition also concedes that, to state a section 1981 claim, Plaintiff needed to identify a contract between the parties that MLA supposedly impaired. She then goes on to define

1

a contract in a way that indisputably shows that she and MLA didn't have one. According to Plaintiff, a contract is a promise or set of promises "for the breach of which the law provides a remedy." (ECF No. 40, Pl's Opp. ("Opp.") at 11). Here, neither party could have sued the other for breach because they did not make any clear commitments to one another. Plaintiff's alleged oral contract was not supported by consideration, had no clear and definite terms, had no agreed-upon duration, and created no enforceable obligations.

Knowing this, Plaintiff argues that MLA's actions prevented her from forming a contract with an unidentified law firm (Law Firm A). But the law is clear that, to sustain a section 1981 claim based on interference with a potential third-party contract, a plaintiff must plead that the defendant: (1) had the authority to block the formation of the third-party contract; and (2) actually exercised that authority to the plaintiff's detriment. Plaintiff has pled nothing of the sort here. Whatever firm "Law Firm A" may be, the complaint contains no allegations that MLA had the power to prevent that firm from hiring Plaintiff or that MLA took any affirmative steps to prevent it from doing so. Accordingly, the Court should dismiss Plaintiff's section 1981 claim not only because she failed to plausibly allege retaliatory intent, but also because she failed to allege the impairment of a contractual right.

## ARGUMENT

### I.     MLA Did Not Misstate the Applicable Pleading Standard

Plaintiff begins the argument section of her Opposition by claiming that "Defendants improperly suggest that Plaintiff must plead the elements of a *prima facie* case of retaliation in order to survive a motion to dismiss." (Opp. at 4). This, of course, is not the case. MLA properly articulated the elements of a *prima facie* claim for retaliation in its Memorandum of Law because the Court must assess the adequacy of her allegations with those elements in mind. Indeed, in the *Woods* case Plaintiff cites, the Fourth Circuit noted that a plaintiff is "'required to allege facts to

2

satisfy the elements of a cause of action created by [the relevant] statute' in compliance with *Iqbal*." *Woods v. City of Greensboro*, 855 F.3d 639, 648 (4th Cir. 2017); *see also Carmack v. Virginia*, 2018 WL 5817345, at *5 (W.D. Va. Nov. 6, 2018) (stating that while a plaintiff need not establish a *prima facie* case at the pleading stage, the court nonetheless "look[s] to the requirements of a prima facie case as a guide in assessing plausibility") (citing *Coleman v. Maryland Court of Appeals,* 626 F.3d 187, 190 (4th Cir. 2010)).

In its "Legal Standard" section, MLA properly quoted from *Twombly* and *Iqbal* in articulating the applicable federal pleading standard. (ECF No. 35-1 ("MLA Mem.") at 5-6). In fact, it is Plaintiff—not MLA—that asks the Court to reject *Twombly* and *Iqbal* and create a more lenient pleading standard for civil rights cases. But, contrary to Plaintiff's suggestion, *Woods* does not endorse a lower standard in such cases; it merely instructs trial courts not to be swayed by their "view of the likely reason for a particular action" into disregarding "the controlling plausibility standard." *Woods*, 855 F.3d at 652. It bears emphasizing that *Iqbal* was a discrimination case in which the Supreme Court held that a complaint by a Pakistani Muslim detainee after the 9/11 terrorist attacks failed to plausibly allege that those who detained him had a "discriminatory state of mind." *Ashcroft v. Iqbal*, 556 U.S. 662, 683 (2009). Thus, one need look no further than *Iqbal* to dispel the notion that courts should apply a less onerous pleading standard when assessing whether a plaintiff plausibly alleged the element of discriminatory or retaliatory intent.

Plaintiff does not stop there, however. She also cites a Report and Recommendation from the Western District of North Carolina for the proposition that civil rights cases should not be dismissed "unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged." (Opp. at 5 (citing *Gary v. Charlotte Secondary Sch. Inc.*, 2024 WL 2789488, at *4 (W.D.N.C. Mar. 29, 2024)). But, of course, this appear-to-a-certainty language finds its origins in pre-*Twombly* and *Iqbal* cases like

3

*Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). It is a throwback to the *Conley v. Gibson* pleading standard that has not been the law of the land for the better part of two decades.

As Plaintiff's *Woods* case makes clear, it is not enough to plead facts *consistent with* a right to recovery. *Woods*, 855 F.3d at 647. To survive dismissal, a plaintiff must allege facts that "'allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678). This means that if the conduct alleged in a complaint is equally consistent with liability and perfectly lawful conduct, the plaintiff has not satisfied her burden at the pleading stage because she has not "nudged [her] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This is just as true in discrimination cases as it is in any other type of civil action. *See Woods*, 855 F.3d at 647 (noting that the Court in *Iqbal* "made clear that [*Twombly's*] heightened standard applied to all civil actions, including claims of discrimination").

In short, Plaintiffs are wrong to criticize MLA's perfectly accurate recitation of federal pleading standards, and they are equally wrong to suggest that this Court should ignore the obvious deficiencies in her complaint because it is a "civil rights" case. Plaintiff was required to plead facts establishing a right to recovery that is plausible—not merely possible or conceivable. Because she failed to do so, her claims should be dismissed.

## II.     Plaintiff's Allegations of Temporal Proximity Do Not Save Her Claims from Dismissal

Citing several employment cases, Plaintiff argues that the close "temporal proximity" between the filing of her Troutman lawsuit and MLA's decision to sever ties with her, standing alone, satisfies her burden of plausibly alleging causation at the pleading stage. (Opp. at 5-6). This is incorrect for four reasons.

4

First, Plaintiff relies on employment cases for this proposition, and this is not an employment case. In the employment context, when an employee complains about how an employer treats a protected class of employees, and the employer immediately fires or demotes the employee, common sense allows courts to infer a causal link between the protected activity and the adverse action. But, here, MLA was *not* Plaintiff's employer. Plaintiff did not complain about MLA's practices or do anything that could cause MLA to want to punish or retaliate against her. And as Plaintiff concedes, the issue before the Court at the pleading stage is not whether Plaintiff plausibly alleged a causal link between the filing of the Troutman suit and MLA's action but, rather, whether Plaintiff alleged a causal link between Plaintiff's *pursuit of race discrimination claims* in the Troutman suit and MLA's action. For reasons explained elsewhere in this Reply and in MLA's Opening Memorandum, this Court cannot infer simply because Plaintiff filed her lawsuit on January 17, 2024 and MLA informed her it would no longer work with her the next day that the inclusion of race discrimination claims in the lawsuit motivated MLA to act as it did.

Second, as MLA noted in its Opening Memorandum, Plaintiff engaged in protected activity *before* she filed her lawsuit on January 17, 2024. Indeed, she told Randi Lewis that she complained at Troutman about alleged race discrimination in November 2023. (Am. Compl. ¶ 18). Nonetheless, Ms. Lewis agreed to work with Plaintiff. (*Id.* ¶ 20). The only logical inference that can be drawn from these allegations is that Ms. Lewis harbored no animus or ill will against Plaintiff for exercising her civil rights. (*See* MLA Mem. at 11-12, citing cases).

Third, multiple courts have held that temporal proximity is not evidence of causation when the defendant "proceed[s] along lines previously contemplated." *See, e.g., Montell v. Diversified Clinical Servs., Inc.,* 757 F.3d 497, 507 (6th Cir. 2014) (quoting a case Plaintiff cites, *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001)). As Plaintiff has alleged here, Ms. Lewis clearly explained to Plaintiff before she sued Troutman that, if Plaintiff did so, Ms. Lewis would not be

5

able to help her find a new job. More specifically, on January 11, 2024, Ms. Lewis allegedly advised Plaintiff not to sue Troutman, stating: "If you file this lawsuit, I can't place you again. [I] will never find you a job." (Am Compl. ¶ 93).

Thus, Ms. Lewis told Plaintiff that, if she sued her old firm, Ms. Lewis did not believe she and Plaintiff had a future working together. The fact that Ms. Lewis proceeded along these previously contemplated lines and told Plaintiff the day after Plaintiff sued Troutman that Plaintiff and MLA should part ways is not evidence of causation under *Montell*. Ms. Lewis understood, just as Plaintiff conceded in her amended complaint, that MLA's recruitment fee would pose a significant obstacle to Plaintiff being hired by a new law firm. But regardless whether Plaintiff's termination from Troutman and subsequent decision to sue her old law firm hurt her odds of finding a new associate position (and common sense suggests that it did), what matters is that *Ms. Lewis* thought this development would make it impossible for her to place Plaintiff and command a commission from one of MLA's law firm clients. This is the true significance of paragraphs 78 and 93 of the amended complaint. Plaintiff herself admits that MLA's recruitment fee hindered MLA's ability to place her at a new firm. And a fair reading of the complaint shows that MLA lacked a retaliatory intent because, rather than inexplicably wanting to punish Plaintiff for vindicating her civil rights, it understandably did not want to waste either party's time and energy on a job search it believed was destined to fail.

Fourth, and relatedly, Plaintiff's temporal proximity argument fails because her own allegations show that MLA had a non-retaliatory, race-neutral reason for behaving as it did. MLA made this argument in its Opening Memorandum, citing *Ali v. BC Architects Eng'rs., PLC*, 832 F. App'x 167 (4th Cir. 2020) and *Saas v. Major, Lindsey & Africa, LLC*, 2024 WL 2113654 (D. Md. May 10, 2024). (*See* MLA Mem. at 12-13). Consistent with the Fourth Circuit in *Ali*, the Sixth Circuit has stated that, "other facts [may] negate any inferences that may arise from the temporal

6

proximity between the protected activities and [the adverse action]." *Barrett v. Lucent Techs., Inc.*, 36 F. App'x 835, 843 (6th Cir. 2002) (affirming finding that African American employee failed to show that her termination was causally connected to protected activities).

That is exactly the case here. Plaintiff's own allegations negate any inferences that could be drawn solely from the temporal proximity between the filing of her lawsuit and the complained-of adverse action. For all the reasons MLA identified in its Opening Memorandum, those allegations do not show that Defendants harbored ill will against Plaintiff (much less took adverse action against her) because she filed race-based claims. The only reasonable inference that can be drawn from the quotes attributed to Ms. Lewis in the amended complaint is that MLA was concerned that the filing of *any* lawsuit would render MLA unable to place Plaintiff at a new firm.[1]

Plaintiff protests that "it is for a jury ultimately to decide why Defendants refused to work with Plaintiff." (Opp. at 8). But the Fourth Circuit has not hesitated to affirm the dismissal of race discrimination claims where the complaints contain non-discriminatory reasons for the adverse action. *See, e.g., Bing v. Brivo Sys., LLC,* 959 F.3d 605, 617 (4th Cir. 2020) (affirming dismissal of discrimination claim because the plaintiff "specifically alleged a non-racial reason for his discrimination"); *McClearly-Evans v. Maryland Dept. of Transp.,* 780 F.3d 582, 588 (4th Cir. 2015) (affirming dismissal of discrimination claim because "the cause that [plaintiff] asks us to infer (*i.e.*, invidious discrimination) is not plausible in light of the *'obvious alternative explanation'* that the decisionmakers simply judged those hired to be more qualified and better suited for the position") (quotation omitted) (emphasis added).

---

[1] Plaintiff improperly cites information outside the amended complaint to combat the notion that she was "unplaceable," stating in a footnote that she is "now employed." (Opp. at 8 & n.1). To the extent the Court considers this information, Defendants note that an internet search shows that Plaintiff is not working at a law firm at which MLA could have placed her. Rather, she took a job as Assistant General Counsel at the D.C. Department of Housing and Community Development.

Notably, in *McClearly-Evans*, the plaintiff "repeatedly alleged" that the defendant did not hire her "because of the relevant decision-makers' bias against African American women." *McClearly-Evans*, 780 F.3d at 585. Plaintiff here did the same thing, alleging that MLA "blackballs … victims of race discrimination who have the courage to speak out against it." (Am Compl. ¶ 3). But such allegations are the very type of "naked," "conclusory" averments that *Twombly* and *Iqbal* instruct district courts to disregard. *McClearly-Evans*, 780 F.3d at 585. Again, a plaintiff must allege facts that allow an inference of illegal wrongdoing, not just the "possibility" of wrongdoing. "The mere fact that a certain action is potentially consistent with discrimination [or, here, retaliation] does not alone support a reasonable inference that the action was motivated by bias." *Bing*, 959 F.3d at 618.

For all the above reasons, Plaintiff's reliance on the temporal proximity between the filing of her lawsuit and MLA's decision to no longer work with her does not save her claims from dismissal.

### III. Plaintiff's Remaining Allegations—Unrelated to Temporal Proximity—Do Not Save Her Claims from Dismissal

Perhaps recognizing the many weaknesses in her temporal-proximity argument, Plaintiff argues that the amended complaint "include[s] a number of additional allegations to demonstrate that MLA refused to work with her because she filed a discrimination suit." (Opp. at 6). But all these allegations fit neatly into two buckets. As noted above, some are conclusory. (*See, e.g.,* Am. Compl. ¶ 3). Others allege that MLA commented on the nature of the Troutman suit, calling it a "discrimination lawsuit." (*Id*. ¶¶ 21, 114-15). The Court is required to ignore allegations in the first bucket. And allegations in the second do *nothing* to establish that MLA severed ties with Plaintiff because she filed a lawsuit containing race-based claims. An email or note stating that Plaintiff filed a "discrimination lawsuit" is merely descriptive. It reflects MLA's knowledge that

8

there are discrimination claims in Plaintiff's suit against her former firm, but one cannot infer from these writings that MLA responded as it did because Plaintiff brought discrimination claims (as opposed to *any other* type of claim) against Troutman.[2]

Another way of looking at the causation analysis is by asking, did Plaintiff plausibly allege that MLA would have continued working with her but for her attempt to enforce her rights by including discrimination claims in her complaint?  Or is it reasonable to infer from her allegations that the mere filing of any suit would have caused MLA to terminate its placement efforts for her?  Plaintiff notes that she "*did not plead* that MLA refused to work with her because it would be unable to place her." (Opp. at 7).  But the relevant questions are what *did* she plead, and what *inferences* can be gleaned from those allegations?  Looking at her allegations, and giving them every benefit of the doubt, none of them permit an inference that MLA would have continued working with Plaintiff after she filed a lawsuit against her old firm, regardless of whether the suit contained race-based claims.  As such, Plaintiff has not pled but-for causation, and the Court should dismiss all three of her claims.

IV. **Plaintiff's Section 1981 Claim Should Be Dismissed for the Additional Reason that No Contract Existed Between the Parties**

Noticeably absent from Plaintiff's defense of its section 1981 allegations is a single case or any other legal authority supporting the notion that Plaintiff and MLA entered into an

---

[2] This is true of Plaintiff's allegation that Randi Lewis supposedly wrote in an internal note, "and [Plaintiff] filed a discrimination lawsuit…sigh." (*See* Am. Compl. ¶¶ 28, 115).  Plaintiff features this supposed quote prominently in her Opposition, saying it is "all that the Court really needs to know to deny Defendants' motion." (Opp. at 1).  But a note stating that Plaintiff "filed a discrimination lawsuit" is merely descriptive and does not show that MLA had a motive to retaliate against Plaintiff for filing such a suit.  In addition, this quote is fabricated, and Defendants are in the process of conferring with plaintiff's counsel about whether Plaintiff will agree to strike or withdraw it from her complaint.

9

enforceable contract.  (*See* Opp. at 11-13).  Plaintiff *does* cite law for the definition of a contract, but that law does not help her.

Specifically, Plaintiff correctly states that a contract is "a promise or set of promises for the breach of which the law gives a remedy or the performance of which the law recognizes in some way as a duty."  (Opp. at 11).  Nowhere does she explain, however, how her dealings with MLA match that definition.  Neither Plaintiff nor MLA have a remedy against the other for breach because there is no promise or set of promises to which they agreed with any degree of certainty or definiteness.  Indeed, that explains why Plaintiff did not bring a breach of contract claim in this litigation despite her disappointment that MLA no longer wanted to work with her.  There is no way for her to identify a contract term that MLA supposedly breached.[3]

Maryland law is clear that, "[w]hether oral or written, a contract must express with certainty the nature and extent of the parties' obligations and the essential terms of the agreement." *Kantsevoy v. LumenR LLC*, 301 F. Supp. 3d 577, 594 (D. Md. 2018).  "If an agreement omits an important term, or is otherwise too vague or indefinite with respect to an essential term, it is not enforceable."  *Id.* at 607; *see also Rigney v. Cyberpoint3 Holdings, LLC*, 2024 WL 3729110, at *4 (D. Md. Aug. 8, 2024) (explaining that "manifestation of agreement or mutual assent in the abstract is not enough").

Thus, merely agreeing to perform an undertaking for another, without agreeing upon specific, certain terms, does not constitute a contract.  Indeed, Maryland courts have found alleged oral contracts with far more specificity than the "contract" alleged here to be unenforceable.  *See, e.g., Mogavera v. Silverstein*, 142 Md. App. 259, 271-72 (2002) (holding that alleged contract

---

[3] The lack of any contractual relationship between job seekers and recruiting firms undoubtedly explains why, despite extensive research, defense counsel was unable to locate a single case in which a candidate sued a recruiter for breach of contract.

10

under which contractor agreed to help developer with $3 million renovation project in exchange for a fee of 5% of estimated construction costs was too vague and indefinite to be enforced); *Dolan v. McQuaide*, 215 Md. App. 24, 30-35 (2013) (holding that contract to share equally in the profits of a car wash was too indefinite to be enforced even though plaintiff performed substantial services for defendant, including drafting a business plan and financial projections, preparing contracts for use with multiple third parties, and creating a logo and website for the business).

    Here, Plaintiff claims there was an "offer and acceptance" between the parties because Plaintiff asked Ms. Lewis for help, and Ms. Lewis "agreed that MLA would work with her in securing [] new employment." (Opp. at 12). But Plaintiff's supposed "contract" does not contain any definite terms. There was no meeting of the minds on exactly *how* MLA would find Plaintiff new employment, *when* MLA would find her new employment, what *resources* MLA would expend, the *number of firms* to which MLA would present her, *how long* the agreement would last, or *what compensation*, if any, Plaintiff would provide if MLA succeeded in landing her a job. As such, the alleged "contract" suffers from the same problem identified in *Mogavero*—i.e., given the lack of any definite terms, it would be impossible to discern whether Ms. Lewis properly performed her obligations. *Mogavera*, 142 Md. App. At 271.

    And, for Plaintiff's part, while she claims there was consideration for the "contract" because she "provided MLA with a degree of exclusivity" (Opp. at 12), Plaintiff admits in her complaint that she was not bound to MLA at all. In fact, despite allegedly agreeing to have Ms. Lewis represent her, she submitted herself directly for consideration to Law Firm A just days after apprising Ms. Lewis of this opportunity. (Am. Compl. ¶¶ 77, 95).

    In short, because no contract existed between Plaintiff and MLA, Plaintiff's section 1981 claim fails as a matter of law and should be dismissed.

11

## V. The Court Should Reject Plaintiff's Highly Speculative Argument that MLA's Actions Prevented the Formation of a Contract Between Her and MLA

Recognizing the many weaknesses in her argument that she properly pled the existence of a contract with MLA, Plaintiff argues in the alternative that she has pled she *would have had* a *contract with MLA* but for MLA's retaliation. (Opp. at 13-15). According to Plaintiff, maybe she "only had the seeds of a contract with MLA, but clearly, if it were not for Defendants' unlawful actions, those seeds would have matured into a true contract." (*Id.* at 14).

This argument fails for three simple reasons. First, Plaintiff did not allege her seeds-of-a-contract theory (or any facts supporting it) in the amended complaint.

Second, that theory is based on pure conjecture. If Plaintiff *had* alleged it, her allegations would have been the type of rank speculation, devoid of any factual enhancement, that federal pleading standards do not allow. *See Iqbal*, 556 U.S. at 678 (citation omitted). According to Plaintiff, "Ms. Lewis would have placed Plaintiff with a new firm and would have been compensated for that placement, if it weren't for Defendants' retaliatory conduct." (Opp. at 15). But Ms. Lewis, while admittedly good at her job, is one legal recruiter in a world filled with thousands of them. Yet despite having access to all these recruiters, Plaintiff has not found a law firm job in the past year.

Third, as MLA argued in its Opening Memorandum, MLA does not enter into contracts with job seekers. It enters into contracts with law firms that compensate MLA for sending lawyers their way. Given this reality, Plaintiff could not plausibly allege that she expected to form a contract with MLA in the future and that she would have done so absent MLA's conduct. Just like every candidate with whom MLA has ever worked, Plaintiff had no contract of any kind with MLA and no expectation of forming one.

12

Accordingly, the Court should reject Plaintiff's new, unpled, and speculative argument that MLA impaired Plaintiff's contractual rights by refusing to form a contract with her.

## VI. No Allegations Support Plaintiff's Conclusory Assertion that MLA Interfered with the Formation of a Contract between Plaintiff and "Law Firm A"

Finally, Plaintiff concludes her Opposition with another unpled theory—i.e., that MLA interfered with her ability to get a job at Law Firm A. In *Painter's Mill Grille, LLC v. Brown*, the Fourth Circuit explained that relief "is available under § 1981 where a party discriminatorily *uses its authority* to preclude an individual from securing a contract with a third party." 716 F.3d 342, 351 (4th Cir. 2013). To establish an entitlement to relief under this theory, however, the plaintiff must show that the defendant "both *possessed sufficient authority* to significantly interfere with the individual's ability to obtain contracts with third parties, and that the [defendant] *actually exercised that authority* to the [plaintiff's] detriment." *Id.* (quoting *Harris v. Allstate Ins. Co.*, 300 F.3d 1183, 1197 (10th Cir. 2002)).

Plaintiff pled neither of these things in her amended complaint. Nor did she cite a single case where any other plaintiff successfully pled them. There is no allegation in the complaint that MLA had the power to prevent Law Firm A from hiring her, or that MLA exercised its non-existent power to block Law Firm A from doing so. The only factual allegations in the complaint about Law Firm A state that: (1) Plaintiff informed Ms. Lewis in a text on January 11, 2024 that Plaintiff saw a job posting at Law Firm A (Am. Compl. ¶ 90); (2) Plaintiff and Ms. Lewis discussed Law Firm A on January 11, 2024 (*id*. ¶ 20); (3) Plaintiff independently submitted her resume to Law Firm A and was granted an interview with it on January 19, 2024 (*id.* ¶¶ 21, 96, 97); and (4) on January 18, 2024, Plaintiff "received a call from Ms. Lewis informing her that the position in the Washington D.C. office of Law Firm A was no longer available," which Plaintiff believed to be "a lie" because she was scheduled to interview there the next day. (*Id.* ¶¶ 99, 100).

13

That is the entire Law Firm A story.  Plaintiff does not allege that MLA had any power or authority over Law Firm A, that MLA contacted or communicated with someone at Law Firm A about her, that MLA caused Plaintiff's January 19, 2024 interview to be cancelled (which cannot be assumed), or that MLA did anything else to hurt Plaintiff's chances of getting a job at Law Firm A.  Plaintiff argues that her "Amended Complaint adequately alleges that Defendants both possessed sufficient authority to significantly interfere with her ability to obtain contracts with potential law firms and that Defendants actually exercised that authority to Plaintiff's detriment." (Opp. at 17).  But just saying something doesn't make it so.  None of Plaintiff's allegations state this or remotely permit this inference.

In the end, Plaintiff's section 1981 claim fails at every turn.  Plaintiff failed to plausibly allege that she entered into a contract with MLA, that she had a reasonable expectation of entering into a contract with MLA in the future, or that MLA did something to block her employment at Law Firm A.  Because Plaintiff failed to allege that Defendants impaired her contractual rights, the Court should dismiss her section 1981 claim.

## CONCLUSION

For the foregoing reasons, Defendants Major, Lindsey & Africa, LLC, Randi Lewis, Andy Ufberg, and Eliza Stoker respectfully request that the Court dismiss Plaintiff's Amended Complaint in its entirety, with prejudice, under Rule 12(b)(6) and grant Defendants any other relief the Court deems just and proper.

November 1, 2024                                        Respectfully submitted,

/s/ *Kraig B. Long*
Kraig B. Long (Fed. Bar No. 25747)
Jeffrey T. Johnson (Fed Bar No. 1724768)
Maya R. Foster (Fed. Bar No. 30733)
NELSON MULLINS RILEY & SCARBOROUGH, LLP
100 South Charles Street, Suite 1600
Baltimore, Maryland 21201
Phone: (443) 392-9400
Facsimile: (443) 392-9499
kraig.long@nelsonmullins.com
jeffrey.johnsono@nelsonmullins.com
maya.foster@nelsonmullins.com

David J. Doyle (*pro hac vice*)
Alexander A. Pabon (*pro hac vice*)
SMITH, GAMBRELL & RUSSELL LLP
311 South Wacker Drive, Suite 3000
Chicago, Illinois 60606
Phone: (312) 360-6000
Facsimile: (312) 360-6520
ddoyle@sgrlaw.com
apabon@sgrlaw.com

Kathryn T. Lundy (*pro hac vice*)
SMITH, GAMBRELL & RUSSELL LLP
1301 6th Avenue, 21st Floor
New York, New York 10019
Phone: (646) 887-9582
Facsimile: (646) 887-8173
klundy@sgrlaw.com

***Counsel for Defendants,***
***Major, Lindsey & Africa, LLC,***
***Andy Ufberg, Randi Lewis, and***
***Eliza Stoker***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 1st day of November 2024, a copy of the foregoing Defendants' Reply in Support of their Rule 12(b)(6) Motion to Dismiss Amended Complaint was filed and via the CM/ECF electronic filing system and/or first-class mail, postage pre-paid, to all counsel of record.

/s/ *Kraig B. Long*
Kraig B. Long (Fed. Bar No. 25747)