IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| GITA F. SANKANO, | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Case No. TJS-24-0951 |
| | * | |
| MAJOR, LINDSEY & AFRICA, LLC, *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \*

## MEMORANDUM OPINION

In this retaliation case, a Black attorney plausibly alleges that a legal recruiting firm refused to help her find work after she sued her former employer for racial discrimination. While her Title VII and state-law claims survive, her Section 1981 claim fails because her alleged "contract" with the recruiter lacks definite terms and enforceable obligations.

Pending before the Court is the Motion to Dismiss Amended Complaint ("Motion") filed by Defendants Major Lindsey & Africa, LLC, Andy Ufberg, Randi Lewis, and Eliza Stoker (collectively, "Defendants").[1] ECF No. 35. Having considered the parties' submissions (ECF Nos. 35, 40, 45 & 47), I find that a hearing is unnecessary. *See* Loc. R. 105.6. For the following reasons, the Motion will be granted in part and denied in part.

## I.    Background

Plaintiff Gita F. Sankano ("Ms. Sankano") filed this lawsuit against Defendants Major, Lindsey & Africa, LLC ("MLA"), Andy Ufberg ("Mr. Ufberg"), Randi Lewis ("Ms. Lewis"), and Eliza Stoker ("Ms. Stoker") to recover for damages for retaliation in violation of three statutes: 28

---

[1] This case is assigned to me for all proceedings by the consent of the parties pursuant to 28 U.S.C. § 636(c). ECF No. 17.

U.S.C. § 1981 (Count One), Title VII of the Civil Rights Act of 1964 (Count Two, as to MLA only), and the Maryland Human Relations Act ("MHRA") (Count Three, as to MLA only). ECF No. 33.

## II.    Factual Allegations

The following allegations are accepted as true for the purpose of considering the Motion. Ms. Sankano is a young Black female attorney. ECF No. 33 ¶ 12. Early in her career, she was fired from the law firm of Troutman Pepper Hamilton Sanders LLP ("Troutman") for complaining about race discrimination. *Id.* ¶ 12. Ms. Sankano wanted to find a job at another law firm, so she contacted Ms. Lewis, a managing director at MLA. *See id.* ¶¶ 36, 73. MLA is a "massive attorney recruiting agency with 25 office locations, 200+ recruiters and 1,500+ annual placements." *Id.* ¶ 1. Ms. Sankano contacted Ms. Lewis specifically because of her "stellar reputation for placing diverse candidates." *Id.* ¶ 15.

When Ms. Sankano explained why she had been terminated from Troutman, Ms. Lewis was skeptical. *Id.* ¶ 18. And when Ms. Sankano told Ms. Lewis that she was going to sue Troutman for race discrimination and retaliation, Ms. Lewis told her "in no uncertain terms not to file a lawsuit." *Id.* ¶ 19. This is because, according to Ms. Lewis, Ms. Sankano would "never find a job if she filed suit." *Id.* ¶ 20. Ms. Sankano ignored Ms. Lewis's advice and filed a race discrimination and retaliation lawsuit against Troutman. *Id.* ¶ 21. Immediately thereafter, Ms. Lewis told Ms. Sankano "that she could no longer work with her because she filed a race discrimination and retaliation suit against Troutman." *Id.* ¶ 22. Thereafter, MLA refused to assist Ms. Sankano in her job search. *Id.* ¶¶ 23-27, 106-113. Additional facts will be supplied below.

## III.    Discussion

### A.    Legal Standard

Rule 12(b)(6) permits a court to dismiss a complaint if it fails to "state a claim upon which relief can be granted." "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint, [and not to] resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (internal quotation marks omitted). And a complaint must consist of "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

When considering a motion to dismiss, a court must accept as true the well-pled allegations of the complaint and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). While a court must take the facts in the light most favorable to the plaintiff, it "need not accept the legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting

*Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint generally "does not need detailed factual allegations." *Id.* So long as the factual allegations are "enough to raise a right to relief above the speculative level," the complaint will be deemed sufficient. *Id.* A "well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable and that a recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks omitted).

### B.    Analysis

The parties agree, at least for the purposes of the Motion, that MLA is an "employment agency" within the meaning of Title VII, 42 U.S.C. § 2000e(c), and the MHRA, Md. Code, State Gov't, 20-601(e)(1). *See* ECF No. 35-1 at 12 n.2. Retaliation claims brought under the MHRA are analyzed under to the same standards as those used for Title VII claims. *Boyer-Liberto v. Fountainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015); *Tribue v. Maryland*, No. BAH-22-2732, 2024 WL 4202444, at *9 (D. Md. Sept. 13, 2024) (citing *Williams v. Silver Spring Volunteer Fire Dep't*, 86 F. Supp. 3d 398, 419 (D. Md. 2015)).

Title VII bars an employment agency from retaliating against an applicant for employment because the applicant engaged in protected activity. 42 U.S.C. § 2000e-3. To state a prima facie claim of retaliation, a plaintiff must allege that she engaged in a protected activity, that the employment agency acted adversely against her, and that the protected activity was causally connected to the employment agency's adverse action. *See Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 250 (4th Cir. 2015); *see also Saas v. Major, Lindsey & Afr., LLC*, No. JRR-23-2102, 2024 WL 2113654, at *4 (D. Md. May 10, 2024), *aff'd*, No. 24-1527, 2024 WL 4850774 (4th Cir. Nov. 21, 2024); *Scaglione v. Chappaqua Cent. Sch. Dist.*, 209 F. Supp. 2d 311, 315 (S.D.N.Y. 2002) ("Like employers, employment agencies may not retaliate against those opposing illegal practices.").

Defendants argue that Plaintiff has not plausibly alleged the third element: causation. This argument lacks merit. The allegations in Plaintiff's Amended Complaint paint a clear picture. Ms. Lewis initially agreed to assist Plaintiff in her search for employment. When Plaintiff told Ms. Lewis that she suspected her termination from Troutman had been because of her race, Ms. Lewis discounted Plaintiff's concern and noted that she had "a lot of white clients who have been let go." ECF No. 33 ¶¶ 18, 81. She discouraged Plaintiff from filing a race discrimination lawsuit against Troutman, advising her that if she sued for race discrimination, Ms. Lewis would be unable to help her find another job. And within days of when Defendants learned that Plaintiff had filed the race discrimination lawsuit against Troutman, they decided that they would not assist in her job search.

Plaintiff makes other allegations in her Complaint but those summarized here are sufficient to allow Plaintiff's claims to proceed as to Counts Two and Three. The close temporal proximity of Defendants learning of the race discrimination lawsuit and their decision to stop working with Plaintiff, combined with Ms. Lewis's discouragement of Plaintiff exercising her rights under Title VII and dismissal of Plaintiff's concerns about race discrimination, makes for a plausible retaliation claim at this stage. Because Plaintiff has stated plausible claims that MLA retaliated against her for suing Troutman for race discrimination, in violation of Title VII and the MHRA, the Motion is denied as to Counts Two and Three. Of course, MLA may have a defense to these claims. But the Court's analysis at this stage is confined to the allegations in Plaintiff's Amended Complaint. For this reason, the Court declines MLA's invitation to speculate as to its real reasons for refusing to work with Plaintiff, or to view the allegations in the Amended Complaint in the light most favorable to MLA.

With regard to Plaintiff's claim for violation of Section 1981, the Court must also consider whether the Amended Complaint plausibly alleges that Defendants impeded a contract with

Plaintiff. Section 1981 states that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts." 42 U.S.C. § 1981(a). The term "make and enforce contracts" includes "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). Section 1981 prohibits nongovernmental actors and those acting under color of State law from impairing contractual relationships protected by the statute because of discrimination. 42 U.S.C. § 1981(c). As such, a plaintiff must allege the impairment of a contract to state a claim under Section 1981. *See generally Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 479-80 (2006) (holding that "a plaintiff cannot state a claim under § 1981 unless he has (or would have) rights under the existing (or proposed) contract that he wishes 'to make and enforce.'"); *Spriggs v. Diamond Auto Glass*, 165 F.3d 1015, 1018 (4th Cir. 1999) ("A § 1981 action, then, must be founded on purposeful, racially discriminatory actions that affect at least one of the contractual aspects listed in § 1981(b).").

Plaintiff alleges that when she spoke with Ms. Lewis on the phone on November 30, 2023, a contract was formed. ECF No. 33 ¶¶ 74-76. In exchange for "allowing MLA to represent her and agreeing to permit MLA to present her to potential employers, [Plaintiff] provided MLA with a diverse, experienced and qualified candidate to present to law firms." *Id.*

The parties agree that the Court should look to Maryland law to determine whether Plaintiff has properly alleged the existence of a contract between Plaintiff and Defendants. *See* ECF Nos. 35-1 at 21-22; 40 at 15-16. Under Maryland law, "formation of a contract requires mutual assent (offer and acceptance), an agreement definite in its terms, and sufficient consideration." *CTI/DC, Inc. v. Selective Ins. Co. of Am.*, 392 F.3d 114, 123 (4th Cir. 2004) (citing *Peer v. First Fed. Sav. and Loan Ass'n of Cumberland*, 273 Md. 610, 331 A.2d 299, 301 (1975)).

Plaintiff argues that the Amended Complaint adequately alleges the existence of a contract. ECF No. 40 at 16. According to Plaintiff, when she contacted Ms. Lewis for helping finding a job, that was the offer. When Ms. Lewis agreed to work with Plaintiff to help her locate new employment, that was the acceptance. And the consideration was one of mutual benefit and concession: MLA got a strong candidate (Plaintiff) to place with a law firm, but they would have to successfully place her in order to earn a fee, and Plaintiff got MLA's credibility in her job search, but "effectively precluded herself from obtaining employment through direct outreach to any prospective employer to whom she was presented by MLA." ECF No. 33 ¶ 78. Plaintiff does not allege that her agreement with MLA was reduced to writing. Nor does she allege that there was any monetary exchange or that the purported contract had any durational limits. And she does not spell out the parties' obligations and expectations of each other in the contract: Was Plaintiff's relationship with MLA exclusive? Was MLA required to make good faith efforts to place Plaintiff in a job?

In arguing that there was no contract between Plaintiff and MLA, Defendants note that under the contract that Plaintiff alleges, neither side would be capable of breach. MLA might fail to place Plaintiff with a law firm, but the terms of the alleged contract did not require MLA to successfully place Plaintiff. In fact, the terms of the alleged contract did not require MLA to make any effort to place Plaintiff in the first place. And for Plaintiff's part, it is unclear how Plaintiff provided MLA with "a degree of exclusivity." *See* ECF No. 40 at 16. Nothing in the alleged contract prohibited Plaintiff from seeking employment on her own (in fact, Plaintiff alleges that she *did* seek employment without MLA's assistance, *see* ECF No. 33 ¶¶ 89, 95-97). And nothing required Plaintiff to accept any job offer that MLA procured on her behalf.

The terms of the contract alleged here are too indefinite to amount to a contract under

Maryland law. It would be impossible for the Court or any factfinder to determine whether Plaintiff and MLA properly performed their obligations. *See* ECF No. 45 at 15. Because the Amended Complaint fails to allege a plausible contract between Plaintiff and MLA, Plaintiff cannot recover for discrimination under Section 1981.

Plaintiff presents other arguments as to why the Court should not dismiss her Section 1981 claim. She argues that even assuming there was no contract, MLA prevented Plaintiff from forming a contract, either between Plaintiff and MLA or between Plaintiff and a prospective employer. ECF No. 40 at 17-21. But in the Amended Complaint, Plaintiff only alleges that Defendants retaliated against Plaintiff by "disengaging with Plaintiff for filing a lawsuit." ECF No. 33 ¶ 117. Because Plaintiff's arguments on these points are untethered from the allegations in the Amended Complaint, the Court declines to consider them.[2] *See S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013) ("It is well-established that parties cannot amend their complaints through briefing or oral advocacy."). At this stage, the Court considers what is alleged in the complaint, not what a party says might have been alleged.

For these reasons, the Court will grant the Motion as to Count One and dismiss Plaintiff's Section 1981 claim with prejudice. Plaintiff has already had the opportunity to amend her complaint—and to do so in response to Defendants' arguments (*see* ECF No. 23) about the deficient Section 1981 claim she pleaded in the original complaint—and she has not sought further leave to amend. Where, as here, a plaintiff has had ample opportunity to cure pleading deficiencies, dismissal with prejudice is warranted. *See Cozzarelli v. Inspire Pharms. Inc.*, 549 F.3d 618, 630

---

[2] Alternatively, even assuming that Plaintiff meant to allege that Defendants prevented the formation of a contract between MLA and Plaintiff in retaliation for suing Troutman, the allegations are so speculative and non-specific as to render the claim implausible.

(4th Cir. 2008).

## IV.    Conclusion

For the reasons set forth above, Defendants' Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**. The Motion is granted as to Plaintiff's claim under Section 1981 (Count One). Count One is dismissed with prejudice. Defendants Andy Ufberg, Randi Lewis, and Eliza Stoker are terminated from this case. The Motion is otherwise denied.

MLA shall file an answer to the Amended Complaint within 14 days of the date of the Order that accompanies this opinion. Once an answer is filed, the Court will enter a scheduling order to allow the parties to begin discovery.

Date: March 17, 2025                                _____/s/_____
                                                          Timothy J. Sullivan
                                                          Chief United States Magistrate Judge